351 So.2d 948 (1977)
Richard Henry GIBSON, Appellant,
v.
STATE of Florida, Appellee.
No. 48698.
Supreme Court of Florida.
July 28, 1977.
Rehearing Denied December 5, 1977.
Louis G. Carres, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Jeanne Dawes Schwartz, Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant, Richard Henry Gibson, was charged by indictment with the premeditated *949 murder of Antonio Chumbo.[1] The jury found appellant guilty as charged and recommended that he be sentenced to death. The trial court so ordered. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution. After careful review of the entire record, we affirm the judgment and the sentence.
The facts are as follows: On the evening of May 9, 1975, Antonio Chumbo and Pedro DeMedeiros, two Brazilian seamen whose ship, the Itapua, was docked in Jacksonville, Florida, left their ship to go into the city. During the course of the evening, they had several beers at various bars in town. While they were in one of the bars, their activities were observed by appellant and his companion, Thomas Lee Calvin, and together they conceived a plan to "roll" the sailors. To aid them in their plan, they enlisted the assistance of Delores Walker. Appellant explained to Miss Walker what she was to do and where she was to take the two men. Walker then enlisted the assistance of another young woman, Wanda Payton. Miss Payton was apparently unaware of the planned robbery.
Later that evening, the two women struck up an acquaintance with the sailors and invited them to their house to spend the night. On the morning of May 10, 1975, shortly after midnight, Chumbo and DeMedeiros got into a car with Gibson, Payton, and Walker. After they had traveled a short distance, Walker, who was driving, turned down a dark street and stopped the car. Gibson directed the two men to get out of the car and to hand over their money. As Chumbo got out of the car, offering his money and begging not to be shot, Gibson shot him twice in the head. DeMedeiros was also shot but was not fatally wounded.
Appellant does not challenge his conviction.[2] All assignments of error are directed to the sentencing portion of the trial.
The sentencing proceeding in this case consisted solely of arguments of counsel. No evidence was presented. As it appears in the record, appellant's counsel's remarks to the jury were very brief:
MR. DEMPSEY: May it please the Court.
Ladies and gentlemen, I am going to assure you that I do not believe I will be here five minutes. I do not think that, in the light of three days that we have been here, it takes a great deal to be said, at this time.
I do want to comment on several things that Mr. Austin has said. He read you what purports to be some statements out of some transcripts. One, supposedly, made by Mr. DeMedeiros and one made by Wanda Payton.
I call your attention to the fact that Mr. DeMedeiros cannot speak English; I think the testimony was that Mr. Chumbo could barely speak English so if Mr. Chumbo was speaking English, I suggest to you Mr. DeMedeiros wouldn't know what he was saying.
Then, Wanda Payton testified to you she couldn't understand either one of them. Based on what you have heard in this case up until this point in time, I do not think it is necessary to pursue this thing. I think you have heard the facts; we can stand up here and argue until we are purple in the face.
Mr. Austin indicated how can you stop this behavior in the community. Ladies and gentlemen, I will submit to you that you won't stop this kind of behavior in the community by convicting one and letting two go.
I have nothing further, Your Honor.
Based on these remarks, appellant argues that he received ineffective assistance of counsel at the advisory portion of the trial. Appellant specifically points to counsel's failure to offer facts in mitigation.
*950 This point is raised for the first time on appeal and was not previously ruled upon by the court below. In State v. Barber, 301 So.2d 7 (Fla. 1974), we held that the issue of adequacy of representation by counsel cannot properly be raised at this time. Except where the error is fundamental, an appellate court must confine itself to a review of those questions which were before the trial court and upon which a ruling adverse to the appealing party was made. Ashford v. State, 274 So.2d 517 (Fla. 1973); Silver v. State, 188 So.2d 300 (Fla. 1966). In any event, the alleged incompetence must be such that the trial was reduced to a mockery or a sham. Parker v. State, 295 So.2d 312 (Fla. 1st DCA 1974); McCrae v. State, 313 So.2d 429 (Fla. 3d DCA 1975); Biggs v. United States, 318 F. Supp. 212 (N.D.Fla. 1970). There is nothing in the record to support such a finding by this court. It is probable that appellant's counsel offered nothing in mitigation because there was nothing to offer. This is substantiated by the findings of the trial judge. Having had the additional benefit of a presentence investigation report, she determined that there were no mitigating circumstances. Counsel is not required to manufacture facts or arguments where none exist.
We reject appellant's contention that Section 921.141, Florida Statutes (1975), is unconstitutional on the basis of State v. Dixon, 283 So.2d 1 (Fla. 1973).
We also reject the argument that appellant was denied fundamental due process of law when:
(a) The prosecutor was permitted to argue to the jury that they should recommend the death penalty as a deterrent to crime;
(b) The prosecutor was permitted to argue to the jury that the testimony was overwhelming and uncontradicted that appellant "pulled the trigger"; and
(c) The prosecutor was allowed opening and closing arguments to the jury in the sentencing portion of the trial.
The comments of the prosecutor regarding the deterrent effect of the death penalty, read in context, were not so prejudicial as to require a new trial.[3]Darden v. State, 329 So.2d 287 (Fla. 1976). Furthermore, appellant is precluded from asserting this argument since he failed to object to the allegedly improper prosecutorial comments at trial. Songer v. State, 322 So.2d 481 (Fla. 1975); State v. Jones, 204 So.2d 515 (Fla. 1967); Tillman v. State, 44 So.2d 644 (Fla. 1950).
*951 The comments referred to in point (b)[4] had a basis in the record and were therefore proper. Songer v. State, supra; Wade v. Wainwright, 266 So.2d 378 (Fla. 4th DCA 1972); Roundtree v. State, 229 So.2d 281 (Fla. 1st DCA 1969).
As to point (c), appellant's counsel not only failed to object to the procedure but acquiesced in it after full discussion with the prosecutor and the bench.
A more serious question is raised by appellant's contention that the trial judge improperly weighed the aggravating and mitigating circumstances in arriving at a sentence. Three circumstances were listed in aggravation:[5]
1. The murder was committed during the commission of an armed robbery. Section 921.141(5)(d), Florida Statutes (1975).
2. The murder was committed for pecuniary gain. Section 921.141(5)(f), Florida Statutes (1975).
3. The murder was especially heinous, atrocious, and cruel. Section 921.141(5)(h), Florida Statutes (1975).
There were no mitigating circumstances.[6] Appellant argues that the trial judge improperly *952 combined numbers (1) and (2). Robbery, by its very nature, includes a motive of pecuniary gain. Thus, in all robbery murders, these two factors will be identical. *953 We agree and have so held in Provence v. State, 337 So.2d 783 (Fla. 1976). In Elledge v. State, 346 So.2d 998, 1003, opinion filed April 7, 1977, this court stated: "We must guard against any unauthorized aggravating factor going into the equation which might tip the scales of the weighing process in favor of death." However, where there are no mitigating circumstances, as in the case here, there is no danger that an unauthorized aggravating factor has served to overcome the mitigating circumstances in the weighing process dictated by our statute. Therefore, although the trial judge improperly combined the two aggravating factors, the aggravating factors which remain are sufficient to justify the sentence of death imposed below.
Accordingly, the judgment and sentence are affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
ENGLAND, J., concurs in part and dissents in part with an opinion.
ENGLAND, Justice, concurring in part, dissenting in part.
I agree with my colleagues that Gibson's conviction should be affirmed. I dissent from that portion of the opinion affirming the sentence, on the ground that Gibson did not have adequate assistance of counsel in the advisory proceeding.
NOTES
[1] The second count of the indictment charged appellant with robbery.
[2] It is our responsibility, however, to review the entire record to determine whether reversible error was committed. We find no such error.
[3] ladies and gentlemen, I have been the heavy, I took the voir dire we call it when we ask you what the questions and what your opinion was and you said you didn't have any strong convictions against the death penalty and I am up here now asking you to sentence a man to death and I don't like to feel  I don't feel real good in the pit of my stomach right now. My knees don't feel real strong right now because I don't like it, I detest it, but I took an oath and we are a nation of laws and we are sworn to follow that law.
I don't want to murder Gibson, I never saw him before a week ago. I don't know a thing about him. I really don't want to hurt him.
Ladies and gentlemen of the jury, the law of the Florida Legislature for a reason says that if you kill under these circumstances, when you are robbing, and you do it under these circumstances where there is aggravation, that you should die and I think they did it and I believe they did it and I think I am justified in asking here that you recommend to this Judge that she put them in the electric chair and share that horrible burden with her for the reason that it tells other people don't do it.
It tells other people this is  you just cannot do this and get away with it, you cannot gun down your fellow man and get away with it. You have to draw the line.
The People of the State of Florida, the People of Jacksonville, the People of Duval County, have got to draw the line on animalistic behavior; you have got to stop it. And that is why we bring 12 people in that know nothing about the facts of the case, that will be the conscience of this community and when they speak and the Court asks you to advise and to help us with this horrible thing.
But I submit to you under your oath that you have got a duty in this case, under the aggravation and mitigation that the Judge will tell you about, to return a verdict of death and I don't do it because I like it.
I don't do it because I like to see people die. I don't want to do that, I am asking because I think it is the law and it is the only way we can live in a civilized society. It must be by law  it must be by law.
[4] the conviction is overwhelming in this case  he pulled the trigger, but even if he didn't pull the trigger, he was an active participant in it, helped set it up, he planned it and schemed it all evening long, helped carry it out and there is overwhelming testimony and the uncontradicted testimony is that he, again, pulled the trigger and shot one man in the head... .
[5] The trial court's findings of fact in aggravation:

(a) Whether the defendant was under sentence of imprisonment when the defendant committed the murder of which the defendant has been convicted.
Finding: Gibson was not under sentence of imprisonment when he committed the murder of which he has been convicted.
(b) Whether the defendant has previously been convicted of another capital felony or of a felony involving the use or threat of violence to the person.
Finding: Gibson has not previously been convicted of any capital felonies or of any felonies involving the use or threat of violence to the person.
(c) Whether, in committing the murder of which the defendant has been convicted, the defendant knowingly created a great risk of death to many persons.
Finding: Gibson did not create a great risk of death to many persons. He did, in murdering Chumbo, create risk of death to the other four people present and, in fact, left one of those people, DeMedieros, to die.
(d) Whether the murder was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery or rape.
Finding: The murder was committed while Gibson was engaged in the commission of an armed robbery of two people.
(e) Whether the murder of which the defendant was convicted was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
Finding: The murder had the purpose of silencing the victims of the robbery. It was not, however, directly committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(f) Whether the murder of which the defendant has just been convicted was committed for pecuniary gain.
Finding: The murder was committed during the commission of an armed robbery of two people which Gibson committed for pecuniary gain.
(g) Whether the murder of which the defendant has just been convicted was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
Finding: The murder was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(h) Whether the murder of which the defendant was convicted was especially heinous, atrocious or cruel.
Finding: The murder was committed after a robbery had been planned by Gibson. Gibson then murdered one person by shooting him twice in the head. At the same time Gibson killed Chumbo, he also shot DeMedieros and left him lying wounded in the gutter.
[6] The trial court's findings of fact in mitigation:

(a) Whether the defendant has no significant history of prior criminal activity.
Finding: The defendant has a significant history of prior criminal activity related as follows:
Juvenile: On February 2, 1962, Gibson was found incorrigible, growing up in idleness and crime, after he had stolen a panel truck from the Arnold Company, 38 East Union Street. On February 2, 1962, Gibson was found guilty of Breaking and Entering and stealing from the Florida Business College, 1214 Jessie Street. While Gibson was being held in custody on these charges in Duval County, he escaped. On September 6, 1962, Gibson was arrested as a Runaway and charged with stealing a 1955 Ford for which he was found guilty and sentenced to the Arthur G. Dozier School for Boys, Marianna, Florida, to remain no longer than January 7, 1968. Gibson remained at the Arthur G. Dozier School for Boys for eight and one-half months and then was released. On November 6, 1963, Gibson was arrested for Robbery having stolen $12.50 from the store of Elizabeth Clinger, 354 East 21st Street. Gibson was given a suspended sentence on the condition that he leave Duval County for a period of not less than one year.
Adult: On January 17, 1965, Gibson was arrested in Jacksonville and charged with Larceny of an Auto, Case No. 65-703, in that he stole a 1954 Ford on January 12, 1965, belonging to Emmett Bruce. On March 31, 1965, Gibson pled guilty to the lesser offense of Using a Motor Vehicle without the Owner's Consent and was placed on one year's probation. On April 7, 1965, Gibson was arrested in Jacksonville for Breaking and Entering a Business and Possession of and Carrying a Sawed-off Shotgun. In this case Gibson was later charged with Burglary of a Pic N' Save Drug store. A second count charged him with Grand Larceny in that he took $274.00 and a pistol valued at $15.00. Gibson pled guilty to the first count and was sentenced to two years in the Duval County Jail. On May 4, 1965, Gibson was arrested in Jacksonville for Violation of Probation, Case No. 65-703. Gibson's probation in Case No. 65-703 for using a Motor Vehicle without the Owner's consent was revoked based upon his arrest on April 7, 1965, for Burglary, and he was, thereafter, sentenced to six months in the Duval County Jail. On August 12, 1967, Gibson was arrested in Jacksonville and charged with robbery of a Pic N' Save Drug store while armed. A trial was held and Gibson was found not guilty. On July 21, 1968, Gibson was arrested in LaGrange, Georgia for Burglary. He was, thereafter, sentenced to the Georgia State Prison for one year. On May 5, 1970, Gibson was arrested in Jacksonville for Drag Racing, Causing an Accident, Reckless Driving and Damaging City Property. Gibson pled guilty and was fined $140.00 with his driver's license revoked for one year. On March 8, 1971, Gibson was arrested in Jacksonville and charged in Case No. 71-988 with Possession and Sale of Dangerous Drugs. He pled guilty to the first count of Possession of Narcotic Drugs and was sentenced to two years in the State Prison. On April 26, 1971, Gibson was charged in Jacksonville with Breaking and Entering with Intent to Commit a Felony and Grand Larceny. It was alleged that Gibson broke into the dwelling of Mary Lee Flanders and stole one fan, one pair of shoes and a bottle of perfume. On June 1, 1971, Gibson was charged in Jacksonville with Breaking and Entering with Intent to Commit a Felony and Grand Larceny. It was alleged that Gibson broke into the dwelling of Laura Mae Tate and took two television sets. Both the April 26, 1971, and June 1, 1971, Breaking and Entering cases were passed to the absentee docket as a result of the two-year State Prison sentence Gibson received in Case No. 71-988. On November 19, 1974, Gibson was arrested in Jacksonville for Fleeing or Attempting to Elude a Police Officer, Unlawful Speed and two counts of Running a Stop Sign. The charge of Fleeing or Attempting to Elude a Police Officer was no billed and Gibson was fined $100.00 for Unlawful Speed and $100.00 for two counts of Running a Stop Sign. On March 28, 1975, Gibson was arrested in Jacksonville and charged with Auto Theft. It is alleged that Gibson and co-defendant, Thomas Lee Calvin, stole a 1971 Volkswagon belonging to Holly Temple of 5424 Roanoke Blvd. Gibson was working at Maddox Brothers Wrecker Service and picked up the Volkswagon with his wrecker. The Volkswagon had been left on the side of the road with mechanical problems. This case is still pending. On April 24, 1975, Gibson was arrested in Jacksonville and charged with Making Threats and Refusing to Disperse. Gibson pled guilty to Making Threats and was sentenced to two days in the Duval County Jail.
(b) Whether the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.
Finding: From the evidence, Gibson was not under the influence of extreme mental or emotional disturbance on May 9, 1975, when he planned the robbery or on May 10, 1975, when he committed the robbery and murder. There was no evidence that alcohol or drugs were being used by Gibson and the evidence conclusively showed that he had the ability to plan and execute the crime. Further, his demeanor before and at the trial gave no indication of any type of emotional or mental disturbance. It should be noted that no Suggestion of Insanity was ever made by either the Court or the defense.
(c) Whether the victims were participants in the defendant's conduct or consented to the act.
Finding: The victims at no time and in no way consented to nor participated in the conduct of the defendant's acts.
(d) Whether the defendant was an accomplice in the murder committed by another person, and the defendant's participation was relatively minor.
Finding: Gibson was the prime planner of the robbery and the active and aggressive perpetrator of the murder.
(e) Whether the defendant acted under extreme duress or under the substantial domination of another person.
Finding: Gibson was the dominant person in the robbery and murder. Even his demeanor in the courtroom was one of a dominant personality. There was absolutely no evidence of any form of duress or domination by another.
(f) Whether the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired.
Finding: Gibson fully appreciated the criminality of his conduct and was capable of conforming his conduct to the requirements of law.
(g) The age of the defendant at the time of the crime.
Finding: As Gibson was twenty-eight years of age at the time of the crime, he had, of course, reached his majority ten years before the crime.