395 So.2d 170 (1980)
Donald PERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 53003.
Supreme Court of Florida.
December 18, 1980.
Rehearing Denied April 7, 1981.
*171 Louis G. Carres, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Charles A. Stampelos, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant, Donald Perry, was convicted of murder in the first degree. The trial judge imposed the death sentence in accordance with the jury's advisory sentence recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the conviction but find we must remand for a new jury sentencing hearing.
This was a robbery-murder of a highly intoxicated victim who, at the time of the murder, was seated in a parked car conversing with a prostitute. A total of five witnesses testified in this cause, all of whom were presented by the state. The two primary witnesses who witnessed the incident were Johnny Peck and Belinda Burton.
Mr. Peck, a forty-five-year-old retired Navy man, was the owner of a two-story rooming house on the corner where the victim was parked. Peck's testimony was as follows. Peck was on his second-floor porch watching television, and had observed the victim's car approach the corner and park. Edith Rawls was standing on the passenger side of the car speaking to the victim when two men, later identified as Daniel Rawls and Donald Perry, approached the car. As Peck was getting up to enter his house from the porch, he heard a shot and saw Daniel Rawls and Perry running from the car. Perry had a gun in his hand and was saying, "Let's go, let's go." The two men entered a white Cadillac and left the scene. Immediately after the shot went off, he heard Edith Rawls yell: "You didn't have to do that. You didn't have to do that." After the men left, Peck advised Edith Rawls to call the police and gave her a dime to do so. Peck did not advise the police of what he had seen on the night of the incident, but on the next day voluntarily went to the police station and gave a statement.
The second primary witness to the incident was Belinda Burton, who testified as follows. She was a prostitute who frequented the area. On the night in question she was standing on the corner near a telephone booth and saw Daniel Rawls and Perry approach the car of the victim. The victim was in the driver's seat and Edith Rawls was on the passenger side. Daniel Rawls approached and stood on Edith's side of the vehicle while Perry approached the driver, pulled a gun, and said: "Give it up, this is it." Burton stated this was street slang meaning "Give me your money." A few seconds later Burton heard a shot, saw sparks, and immediately ran away from the scene. Burton did not tell the police about what she saw until three weeks later, while she was incarcerated at the county prison farm for larceny. She stated it was her belief that, because of her testimony, the prosecutor would speak in her behalf to the judge in her case but she was not promised anything specific for testifying.
The record indicates that Peck knew Burton as a prostitute who frequented the area, but he did not see her on the night of the murder. Peck stated she could have been there and he may not have seen her if she was behind something. The record further reflects there was a phone booth on the corner.
The examining physician testified the victim was shot with a.22- or .25-caliber weapon at a range of ten to twelve inches, with a bullet entering the upper left chest region and exiting at the lower right chest. He further stated this was consistent with *172 the victim being shot while sitting in a car by a person standing on the driver's side of the auto. He also testified the victim was "very drunk," having a blood alcohol reading of .30.
The other witnesses at the trial phase were a friend of the victim who identified the body, and the investigating police officer who described the murder scene.
At the conclusion of the testimony of the five witnesses, the state rested. The defense chose not to call witnesses, including known eyewitnesses, or offer any evidence, and rested. The state then moved to reopen and proffered the testimony of a woman who allegedly would testify that Perry had asked her to state that he was playing basketball at the time of the murder, and the testimony of Mrs. Peck to corroborate her husband's testimony. The defense objected, and the trial court denied the state's request to reopen. The case proceeded to the conclusion of the trial phase, with the jury finding Perry guilty of first-degree murder.
Approximately fifteen minutes prior to the final argument, the public defender's office received a telephone call from Jacob Johnson, Jr., who stated that Belinda Burton could not have been at the murder scene because she was with him on that evening. The defense did not bring this information to the attention of the court and no motion was made to reopen the testimony.
Upon request of the defense, Jacob Johnson was allowed to testify at the sentencing phase on the grounds that since Burton was the only witness to state the appellant pulled the trigger, the jury could reject her testimony and determine from Peck's testimony that Perry, although a participant, was not the trigger man. Johnson stated he was Belinda Burton's boyfriend and that they had gone to dinner and to a double feature movie on the evening of the murder. He further testified that Belinda Burton had told him that she would testify for the state in order to have her sentence reduced. Johnson, when he testified, was himself incarcerated in the county jail pending trial on fifteen federal felony offenses. He could not remember what movies they had seen on the evening in question. He further admitted having been in contact with Perry while both were incarcerated in the county jail pending trial.
During the sentencing phase of the proceedings, other alleged mitigating evidence was rejected. Counsel for the appellant sought to present the testimony of the mother of Perry concerning his age, background, and upbringing. The trial court ruled the testimony was inadmissible because it was not within the itemized statutory mitigating factors, citing our decision in Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). Further, the trial court allowed the prosecution to present as an aggravating factor evidence of pending criminal charges.
At the conclusion of the sentencing phase, the jury recommended the imposition of the death penalty. In imposing the death sentence, the trial judge found three aggravating factors: (1) the appellant was previously convicted of a felony involving the use or threat of violence to the person; (2) the murder was committed while the defendant was engaged in the commission of a robbery, and (3) the murder was committed for pecuniary gain. The trial court found no mitigating circumstances present, stating the age of the appellant at the time of the crime, twenty years, was the only one that could be arguably present and he rejected it as a mitigating factor.

Trial Phase
The appellant asserts the following grounds as reversible error in the trial phase: (a) denial of a motion for new trial on the ground of newly discovered evidence; (b) limitation of defense cross-examination of a state witness; (c) improper comments by the prosecutor in closing argument; (d) failure to compel disclosure of police investigative reports; (e) state's successful challenge for cause of a juror; (f) insufficient evidence to sustain the verdict; (g) improper jury instructions concerning *173 flight and first-degree felony murder; (h) admission of improper testimony concerning fingerprint exemplars taken from the appellant; (i) insufficient inquiry concerning jury influence by outside matters.
We find no error in the carefully conducted trial phase of this trial. The evidence is clearly sufficient to sustain the verdict of first-degree murder. We reject all the asserted grounds for error, and find the only contentions warranting discussion are (a) a new trial should have been granted for newly discovered evidence, and (d) the police investigative reports should have been disclosed.

New Trial for Newly Discovered Evidence
The appellant claims he should have a new trial because the testimony of Jacob Johnson, Jr., stating Belinda Burton was not present at the scene and only testified to reduce her sentence, is adequate impeachment of Burton's eyewitness testimony to meet the two-prong test of Florida Rule of Criminal Procedure 3.600(a)(3) as (1) "new and material evidence, that if introduced at the trial would probably have changed the verdict ..." and (2) "that the defendant could not with reasonable diligence have discovered... ." The trial court found that the evidence was discovered not after the trial but rather before closing arguments on the guilt phase. The court held that under Robinson v. State, 50 Fla. 115, 39 So. 465 (1905), the appellant did not use proper diligence and could have properly moved the court to permit him to reopen and introduce such testimony at any time prior to the jury's retiring to consider its verdict. In considering the effect of Johnson's testimony, the trial court held:
[T]he newly discovered evidence was directed toward the impeachment of one of the State's witnesses and did not go to the merits of the case within the meaning of the aforesaid requirements. The new witness, John Jacobson [sic], knew nothing about the facts regarding the murder. He was not at the scene of the crime. His testimony was sought to be elicited to impeach the credibility of one of the state's witnesses... .
We agree that Johnson's testimony pertained only to the credibility of Burton. We reject an absolute rule that impeachment testimony can never satisfy that portion of rule 3.600(a)(3) which requires that new evidence "would probably have changed the verdict." In this case, however, we find the new evidence did not satisfy the new trial standard under rule 3.600. The record reflects that Johnson's character was itself susceptible to impeachment, the new evidence was nonsubstantive in nature, and the advisory jury rejected Johnson's testimony in recommending the death penalty. Having held the new trial standard was not met, we need not address the issue of timeliness of the new trial request. We do, however, note that appellant had effectively blocked the state from reopening the testimony to put on additional witnesses and the presentation of Johnson's testimony would have opened the door to allow the state to call other witnesses which this record reflects were knowledgeable about the incident.

Demand for Police Investigative Reports
The appellant sought, by discovery motion and subpoena duces tecum, the police investigative reports of this murder upon the grounds of (a) Florida Rule of Criminal Procedure 3.220; (b) the public records law, chapter 119, Florida Statutes (1977); and (c) the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial judge denied the motion, finding that appellant had failed to establish sufficient grounds either to require the court to order an in camera examination or to produce the discovery demanded. We agree.
There is no constitutional right to discovery, and the Supreme Court of the United States has said there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). We recognize that the doctrine set forth in Brady v. Maryland and Giles v. *174 Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), requires the prosecutor to disclose material exculpatory information that the prosecutor has in his possession. However, as stated by the United States Supreme Court in United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), "[T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." The court further stated that "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." 427 U.S. at 109-10, 96 S.Ct. at 2400, 2401.
To grant the request of the appellant under the circumstances of this record would require the police to produce all their investigative reports for all defendants charged with criminal offenses. We reject this contention and find that neither the federal constitution, the Brady doctrine, Florida criminal rules pertaining to discovery, nor the Florida statutes mandate disclosure or in camera inspection of these police investigative reports. Disclosure requirements for the prosecution principally concern those matters not accessible to the defense in the course of reasonably diligent preparation. We find the appellant had the benefit of all relevant information and was able to discover much more than would be available in most other jurisdictions, including the federal courts. Compare Fla.R. Crim.P. 3.220(a) with Fed.R.Crim.P. 16(a). We have broad discovery rules, and defendants must diligently utilize them. See State v. Gillespie, 227 So.2d 550 (Fla.2d DCA 1969).
The prosecutor is obligated under our reciprocal discovery rules to provide the defendant with a broad range of information relevant to the offense. Fla.R.Crim.P. 3.220(a). Nothing in this record demonstrates that the state has not complied or has acted in any improper manner. Indeed, it appears that the state voluntarily gave the defense information pertaining to police records of prospective witnesses which was neither required by discovery rules nor otherwise available to defense counsel. We conclude there is no merit in appellant's broad-brush demand for police investigative reports.

Sentencing Phase
During the sentencing phase, the trial judge excluded the proffered testimony of Perry's mother on the grounds that it did not fall within the statutory mitigating factors, citing our decision in Cooper v. State, 336 So.2d 1133 (Fla. 1976). The trial judge followed the law as he believed it was being interpreted at the time of trial. The United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), subsequently held that a defendant may not be precluded from offering as a mitigating factor any aspect of his character and record or any evidence concerning the circumstances of the offense which might justify a reduction of a death sentence to life imprisonment. In Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), we clarified the apparent misconstruction of Cooper v. State, expressing the view that our statute allowed any relevant mitigating evidence, and we explained that our decision in Cooper was never intended to limit consideration of mitigating circumstances to the named statutory factors. The exclusion of the mother's testimony was error under Lockett and Songer.
As conceded by the state, we also find the trial court committed error by allowing the prosecutor to present as evidence of aggravation to both the jury and the trial court the existence of pending criminal charges against Perry, of which he had not been convicted at the time of sentencing. Clearly, the death penalty statute expressly limits what may be considered concerning a defendant's prior criminal record to only those offenses for which "the defendant was previously convicted," and these convictions are limited to "another capital felony or ... felony involving the *175 use or threat of violence to the person." § 921.141(5)(b), Fla. Stat. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
Finally, the trial court found as aggravating factors both the underlying felony of robbery and the commission of murder for pecuniary gain. We have expressly found these factors are cumulative and may not be considered individually in aggravation when the only evidence that the crime was committed for pecuniary gain was the same evidence of the robbery underlying the capital crime. Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978); Provence. The doubling up of these aggravating factors was also error. At the new sentencing hearing, the commission of the murder as a crime committed for pecuniary gain can be considered only as one aggravating circumstance.
We find that the trial judge correctly rejected proffered testimony concerning a polygraph examination. Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976); see United States v. Masri, 547 F.2d 932 (5th Cir.1977), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977).
In conclusion, we affirm the conviction and remand for a new sentencing hearing before a new jury in accordance with the views expressed in this opinion.
It is so ordered.
SUNDBERG, C.J., ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., and VANN, Associate Justice, concur.