688 So.2d 895 (1996)
Dean KILGORE, Appellant,
v.
STATE of Florida, Appellee.
No. 83684.
Supreme Court of Florida.
August 29, 1996.
Rehearing Denied March 6, 1997.
*896 James Marion Moorman, Public Defender and Paul C. Helm, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General and Carol M. Dittmar, Assistant Attorney General, Tampa, for Appellee.

CORRECTED OPINION
PER CURIAM.
Dean Kilgore appeals his conviction for first-degree murder and the sentence of death subsequently imposed for this prison murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the conviction for first-degree murder and the imposition of the death sentence.

FACTS
Kilgore was serving a life sentence for first-degree murder, a consecutive life sentence for kidnapping, and an additional consecutive five-year sentence at the Polk Correctional Institution when the events in the instant case took place.
On February 13, 1989, Kilgore and his homosexual lover, Emerson Robert Jackson, had a confrontation as Jackson was leaving his cell. Prior to the confrontation with Jackson, Kilgore waited outside Jackson's cell and smoked a cigarette with another inmate. Kilgore carried a homemade shank *897 knife. Kilgore approached Jackson outside his cell and stabbed him three times. After the stabbing, Kilgore poured a caustic liquid onto Jackson's face and into his mouth. Jackson died as a result of the stab wounds. Kilgore went to the administration building immediately after the incident and told the guards, "I stabbed the bitch."
Kilgore was indicted for first-degree murder and possession of contraband by an inmate. Originally, Kilgore pleaded nolo contendere to both charges. When a sentence of death was announced, however, Kilgore moved to withdraw his plea on the grounds that his attorney had mistakenly advised him that the death sentence would not be imposed because of the plea. Although a notice of appeal had been filed, this Court relinquished jurisdiction to the circuit court in order that it might address the motion. The lower court granted the motion to withdraw the plea and Kilgore was tried by a jury. At one point during voir dire, Kilgore waived his presence in the courtroom. At other times during the trial, he expressed dissatisfaction with the proceedings. Kilgore was found guilty on both counts and, by a vote of nine to three, the jury recommended that the death penalty be imposed for the murder.
The trial judge found that two aggravating circumstances were proven beyond a reasonable doubt: (1) Kilgore was under sentence of imprisonment at the time he committed the murder;[1] and (2) Kilgore was previously convicted of a felony involving the use or threat of violence to the person (first-degree murder, kidnapping, trespass with a firearm, three counts of assault with intent to commit murder in the second degree, two counts of aggravated assault, and resisting arrest with force).[2] The trial judge also found that two statutory mitigating factors applied: (1) Kilgore acted under the influence of extreme mental or emotional disturbance;[3] and (2) Kilgore's capacity to conform his conduct to the requirements of law was substantially impaired.[4] Furthermore, the trial judge stated that he considered the following nonstatutory mitigating factors: Kilgore's extreme poverty as a child, his lack of education, and his poor mental and physical condition. After all factors were weighed, the trial judge ruled that the death sentence was the appropriate sanction. He reasoned that "the accomplishment of this murder necessitated considerable preparation, cunning, and stealth" because entry to Jackson's dormitory was planned, the shank knife was borrowed, the caustic liquid was hidden, and Jackson's presence was anticipated.
Finally, the trial judge wrote that "[t]o sentence Mr. Kilgore to anything but death would be tantamount to giving him a license to kill."

CONVICTION PHASE
Kilgore raises a total of six issues in this appeal. We first address the three claims related to the conviction-phase proceeding. Kilgore avers that he was denied due process under both the state and federal constitutions when his request for a special heat-of-passion instruction was denied. The special instruction would have explained heat of passion in the context of intentional homicide. Essentially, the instruction would have clarified that a person acting under the heat of passion is, in some circumstances, incapable of premeditation.[5] Instead, the trial judge utilized the standard jury instructions. Included in these instructions was a discussion of heat of passion in the context of excusable homicide. Further, the requirement *898 of premeditation in a first-degree murder conviction was repeatedly emphasized. This Court has acknowledged that the standard jury instructions are sufficient to explain premeditation. Spencer v. State, 645 So.2d 377, 382 (Fla.1994). We also have ruled that the trial court does not necessarily abuse its discretion in denying a special heat-of-passion instruction. Kramer v. State, 619 So.2d 274, 277 (Fla.1993). After viewing these facts, we conclude that there is no indication that the trial court erred by refusing the requested instruction. The necessary elements of premeditation were presented with the standard instruction and the trial court was well within its prerogative to refuse a separate, and possibly confusing, instruction.
Kilgore claims that the failure to give the requested special instruction was compounded by the prosecutor's closing remarks to the jury. However, no objection was made at the time of the disputed remarks.[6] We have held that allegedly improper prosecutorial remarks cannot be appealed unless a contemporaneous objection is recorded. Gibson v. State, 351 So.2d 948, 950 (Fla.1977), cert. denied 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978); State v. Jones, 204 So.2d 515 (Fla.1967). The exception to this general rule is the situation where the allegedly improper comments constitute fundamental error. We have defined fundamental error as being error that "`reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). Using this standard, we find that the prosecutor's remarks in this case fall well short of constituting fundamental error. The challenged remarks simply elaborate on the heat of passion as it is described by the standard jury instruction. Consequently, this issue does not constitute fundamental error and is precluded because there was no contemporaneous objection. See Bonifay v. State, 680 So.2d 413, 418 n.9 (Fla. 1996)(holding claim of improper prosecutorial argument procedurally barred when no contemporaneous objection made and no fundamental error present).
Second, Kilgore claims that the trial court should have ordered a competency evaluation during the trial. We find this claim to be without merit. We initially note that Kilgore's counsel did not request a competency evaluation during the course of the trial. A single comment about competency,[7] made in passing and now cited by Kilgore, cannot qualify as a request for a competency evaluation. Our responsibility is to examine this record and determine whether the trial court erred by not ordering a competency examination, on its own motion, during the course of the trial. A trial court does have *899 the responsibility of ensuring the competency of a defendant throughout the course of trial proceedings.[8] We note that, immediately prior to the trial in this case, Kilgore was examined and declared competent. We find that his actions during trial were not such as to provide the lower court an adequate reason to doubt the pre-trial evaluation. If anything, Kilgore's angry comments and reactions indicate that he was fully aware of the proceedings. Indeed, his outburst near the end of the trial was contemporaneous with the presentation of damaging evidence by the prosecution. We find there are no justifiable reasons in this record that would require the trial court, on its own motion, to direct another competency evaluation during the course of the trial.
Third, Kilgore claims that his due process rights under both the state and federal constitutions were violated when he was allowed to waive his presence at jury selection. We are not persuaded by this contention. We have previously ruled that a trial court does not exceed its authority by allowing a defendant to knowingly and voluntarily waive the right to be present at any given stage of a proceeding. Peede v. State, 474 So.2d 808, 815 (Fla.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986). In Peede we wrote:
If a defendant's disruption of a capital trial can result in his removal and the continuation of the trial in his absence, then he should be able to knowingly and voluntarily waive his presence. Otherwise, a defendant who does not want to be present during the trial and who fully understands the consequences of his absence would be forced into the untenable position of having to disrupt the courtroom to such an extreme as to result in his removal, thereby seriously prejudicing his case.
Id.
The instant facts show that Kilgore requested to waive his right to be present. The prosecution protested and stated that the situation we now encounter would undoubtedly ensue. Kilgore's counsel, on the other hand, stated that Kilgore's waiver was free and voluntary. The trial judge then questioned Kilgore personally and concluded that Kilgore's waiver satisfied all constitutional standards. We find no error under these circumstances.

PENALTY PHASE
Three penalty-phase claims have been raised by Kilgore. He first asserts that he was denied an individualized determination that a death sentence was the appropriate punishment. Instead, he argues, the trial court found itself obligated to impose the death sentence. Kilgore cites the following language in the sentencing order:
Under certain circumstances the state not only has the right, but the obligation, to take the life of convicted murderers in order to prevent them from murdering again. This is one of those cases. To sentence Mr. Kilgore to anything but death would be tantamount to giving him a license to kill.
Kilgore argues that the "license to kill" language indicates that the trial judge failed to consider any sentence other than the death penalty. He equates this sentencing procedure to the procedure invalidated by the United States Supreme Court in Sumner v. Shuman, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987). The Shuman Court examined a Nevada statute that mandated the imposition of the death penalty in any case where the defendant already was under a sentence of life imprisonment without possibility of parole. The Supreme Court found that such a sentencing scheme violates the Eighth and Fourteenth Amendments to the United States Constitution. It reasoned that "[t]he simple fact that a particular inmate is serving a sentence of life imprisonment without possibility of parole does not contribute significantly to the profile of that person for *900 purposes of determining whether he should be sentenced to death." Id. at 80, 107 S.Ct. at 2725. Kilgore claims that the inclusion of the "license to kill" language indicates that this trial judge would impose the death sentence on any defendant serving a life sentence from a prior conviction. We disagree. In context, the sentencing order is simply an attempt by the judge to evaluate the specific evidence in this case and independently apply it to Kilgore. The challenged language comes after an express evaluation of both the aggravating and mitigating factors. All proposed statutory mitigators were individually evaluated. Two were found to exist. The judge also evaluated the nonstatutory mitigation. Finally, the trial judge also considered the recommendation by the jury. In our view, the record clearly supports the conclusion that Kilgore received an individualized sentence. The essence of his complaint is that the trial judge gave too much weight to his prior convictions. There is no constitutional infirmity in using prior convictions as aggravators. In fact, even the Shuman Court recognized the following:
Past convictions of other criminal offenses can be considered as a valid aggravating factor in determining whether a defendant deserves to be sentenced to death for a later murder, but the inferences to be drawn concerning an inmate's character and moral culpability may vary depending on the nature of the past offense. The circumstances surrounding any past offense may vary widely as well.... Even if the offense was first-degree murder, whether the defendant was the primary force in that incident, or a nontriggerman like Shuman, may be relevant to both his criminal record and his character.
Id. at 81, 107 S.Ct. at 2725. The aggravating factors in this case were weighted according to the nature of the prior offenses. In particular, the sentencing order explains the magnitude of the prior murder as follows:
In the earlier case, the jury found that Mr. Kilgore illegally entered the residence of a man and a woman and their children late at night while armed with a firearm. Mr. Kilgore shot the man to death in the presence of one [of] his children. Mr. Kilgore then kidnapped the woman and took her to an orange grove where he kept her the rest of the night.
Accordingly, we find that the sentencing order adequately evaluates both the aggravation and mitigation. Kilgore was not deprived of an individualized sentencing determination.
In his second penalty-phase claim, Kilgore asserts that the sentencing order was insufficient in its treatment of the mitigation presented. In particular, he avers that the trial judge contradicted himself in treating mental health mitigation and failed to expressly evaluate each piece of proposed mitigation.
As previously recited, the trial judge found that two statutory mitigating factors were proven: (1) Kilgore acted under the influence of extreme mental or emotional disturbance; and (2) Kilgore's capacity to conform his conduct to the requirements of law was substantially impaired. In his conclusion, however, the trial judge wrote:
Concerning the mitigating circumstances, I have found that both statutory mental health circumstances were proved during the penalty phase. Nevertheless, there is little or nothing about the facts of this case from which one could conclude that at the time of the murder, or during the twenty-four hours preceding the murder, Mr. Kilgore was under the influence of extreme mental or emotional disturbance.
Kilgore asserts that such a conclusion necessarily contradicts the earlier finding that the two statutory mitigating factors existed. Basically, Kilgore is complaining that the judge gave no weight to the statutory mitigation. We disagree. Instead, we read the sentencing order to indicate that the mental health factors were entitled to little weight. Certainly this is within the discretion of the trial court. E.g., Jones v. State, 648 So.2d 669, 680, cert. denied, ___ U.S. ___, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995) (the weight to be given mitigating factors is within the trial court's discretion); Swafford v. State, 533 *901 So.2d 270, 278 (Fla.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989); Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).
Kilgore also asserts that the trial court erred in failing to thoroughly explain its rulings on nonstatutory mitigation. We cannot agree. We find that the sentencing order, in these circumstances, satisfies the dictates of both Campbell v. State, 571 So.2d 415 (Fla.1990), and Lucas v. State, 568 So.2d 18 (Fla.1990). The trial court expressly evaluated both mitigation proposed by Kilgore and mitigation found in the record. While we acknowledge that the trial court failed to expressly comment on the relationship between Kilgore and Jackson, we find the error, if any, to be harmless. The existence of this relationship was presented during the trial. We are confident that the trial judge was cognizant of this factor when weighing the mental health evidence.
In his third penalty-phase claim, Kilgore argues that the trial court erred in denying his proposed jury instruction on nonstatutory mitigating factors. We have repeatedly ruled that the standard jury instructions are sufficient. The trial court was well within its discretion to deny a special instruction. Ferrell v. State, 653 So.2d 367, 370 (Fla.1995); Gamble v. State, 659 So.2d 242, 246 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 933, 133 L.Ed.2d 860 (1996); Walls v. State, 641 So.2d 381, 389 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995).
Accordingly, we affirm Kilgore's conviction for first-degree murder and affirm the imposition of the death sentence.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
KOGAN, C.J., concurs in part and dissents in part with an opinion.
KOGAN, Chief Justice, concurring in part and dissenting in part.
I concur in the majority's affirmance of the conviction for first degree murder, but I would reverse the sentence of death and remand for the entry of a sentence of life imprisonment. Based upon the trial court's finding that Kilgore was acting under the influence of an extreme mental or emotional disturbance and that his capacity to conform his conduct to the requirements of law was substantially impaired, I find that the death penalty is disproportionate under our case law.
NOTES
[1] § 921.141(5)(a), Fla.Stat. (1995).
[2] Id. § 921.141(5)(b).
[3] Id. § 921.141(6)(b).
[4] Id. § 921.141(6)(f).
[5] The proposed special instruction read:

An intentional unlawful killing is not premeditated murder if it was committed while the defendant was in the heat of passion brought on by sudden provocation sufficient to produce in the mind of an ordinary person the highest degree of rage, anger, or resentment that is so intense as to overcome the use of ordinary judgment thereby rendering a normal person incapable of reflection.
[6] One example of an allegedly improper remark is:

Now, the defense has tried to convince you that this is a heat of passion case. Legally the only thing they could stand up here and ask you to do if you want to argue heat of passion is to say this is excusable and Mr. Kilgore is excused by the law for taking Mr. Jackson's life because the heat of passion was such that there was sufficient provocation, sufficient provocation, and it was excusable because it was an accident and misfortune. And I don't think they've even done that. I don't think in good faith you're going to hear them stand up here and say that the heat of passion completely excuses his criminal conduct. What I think they've argued to you is that well, look at the passion and knock it down from First Degree to Second Degree. But that's not where heat of passion comes in. Heat of passion says it's excusable if it fits that very limited scenario. Which it doesn't.
[7] Kilgore's trial counsel said:

Secondly, of course, I have had him psychologically evaluated prior to the trial and we had him evaluated a number of years ago. He is mentally retarded. And combined with the stress of the trial over the last week and his mental condition to begin with, I just don't know whether he's even competent. I know that his outburst in the courtroom today wasn't in his best interest. I don't know whether he has the ability to frankly control himself.
[8] Fla.R.Crim.Pro. 3.210(b); Standards of Criminal Justice, Standard 7-4.2(a) (American Bar Ass'n 1986).