# Supreme Court of Florida

No. SC19-1870

**STATE OF FLORIDA,**
Petitioner,

vs.

**TONY GARCIA,**
Respondent.

August 25, 2022

COURIEL, J.

We have for review the decision of the Fourth District Court of Appeal in *Garcia v. State*, 279 So. 3d 148, 149 (Fla. 4th DCA 2019), which affirmed the Respondent's conviction for arson but found that his due process rights were violated because his sentence may have been based, at least in part, on a factor the trial court was not permitted to consider: Garcia's misconduct while out on bond.[1] Finding that the trial court committed no fundamental error, we

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

quash the Fourth District's decision to the extent that it requires the trial court to resentence the Respondent.

**I**

On June 11, 2014, Tony Garcia's mortgage lender sent him notice that, in a month, his home would be sold at foreclosure. Seventeen days later, Garcia's neighbor saw the house go up in flames and called 911. The State charged Garcia with arson for setting fire to the place. Garcia's first trial ended in a hung jury, and, with his second trial pending, a judge released him on bond.

As the evidence later heard by the sentencing judge would establish, Garcia made a menace of himself while out on bond. On one occasion, while driving with a suspended license, he left the scene of a car crash and was arrested. Another day, shaking and crying as he did, Garcia aimed a gun in the face of a neighbor who had stopped by Garcia's house to pick up some tools and have a beer; the neighbor did not call the police. Just two days after that episode, the police were summoned to Garcia's ex-wife's house, where Garcia had gone to retrieve guns from a safe. They found him banging on her door, acting in a manner that to them suggested intoxication, mental disturbance, or both. Garcia

denounced an officer on the scene with a racial epithet; the officer deescalated the situation and gave Garcia a ride home.

No sooner had Garcia gotten out of the officer's car than he struck up an argument with his neighbor, threatening to shoot him and the officer who had driven him home. The officer, at that point having heard enough, took Garcia to a mental health facility and sought to have him involuntarily examined under the Baker Act.[2] Not an hour later, Garcia had walked out of the facility and was on the street again. Another officer, having received a tip about Garcia's whereabouts, found him eating chicken wings and drinking beer at a local bar and returned him to the mental health facility.

Learning all this, the trial court expressed its concern for the safety of Garcia and of the community and revoked Garcia's bond. He would await retrial on his arson charge in jail. While there, as the trial court would later learn, his threatening conduct continued.

---

2. Section 394.463, Florida Statutes, allows a law enforcement officer to take into custody and deliver to an appropriate facility any person displaying specified signs of mental illness, including signs that "[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or others in the near future." § 394.463(1)(b)(2), Fla. Stat. (2014).

On a call with his ex-wife, Garcia said that he would break his daughter-in-law's neck if he ever saw her again. On another call, he told his ex-wife that he wanted to summon a gang to his daughter-in-law's house but was hesitant to do so knowing they would also "take out" his grandson.

Garcia proceeded to his second trial and was convicted of first-degree arson.[3] The judge ordered a presentence investigation report. The report showed that Garcia had a 12th-grade education; that he was unemployed due to disability; that he had a criminal history (one conviction for battery and one for the time he drove on a suspended license while out on bond); and that his minimum and maximum permissible sentences were 34.8 months and 360

---

[3] In both trials, the jury heard evidence about the foreclosure of the home and about how the fire may have been started; evidence, for example, that firefighters found a leaking propane tank in the living room—the valve left open—and gas cylinders lying around the kitchen, one of which was in a closed toaster oven. In the second trial, however, the jury also heard that Garcia had given up on keeping the home, supported by evidence that he made no effort to pay the mortgage. They also heard from the officer who first notified Garcia of the fire. As the officer entered a local bar where he heard he might find Garcia, Garcia raised his hand and said, "I'm here," suggesting Garcia knew that the police would be looking for him. According to the officer, Garcia seemed unsurprised when the officer told him there was an "incident" at his house.

months, respectively.  The report concluded that Garcia failed to cooperate with the court and the law, and that despite suffering from stomach cancer and being confined to a wheelchair, he was a threat to himself and society.

Garcia moved for a downward departure from the lowest permissible sentence as calculated under the Criminal Punishment Code; he wanted a sentence of probation.  He argued that he was severely ill with terminal cancer and required significant medical attention to maintain his current state of health.  The State, for its part, recommended a sentence of 84 months.  In its sentencing submission, it laid out Garcia's conduct while out on bond, including his threats to witnesses, argued that the defendant's conduct had callously endangered the lives of neighbors and first responders, and argued Garcia had proffered no evidence that he required specialized medical treatment.

The sentencing court conducted the analysis we required in *Banks v. State,* 732 So. 2d 1065 (Fla. 1999), and declined to depart from the minimum sentence.  It said:

> I've taken into consideration all the evidence, the
> PSI, the state's argument, the defense's argument . . . .
> Now, based on all the evidence, the severity of the crime,

the issues that were testified to, this is [a] very, very sad situation all around, it really is. But even if I could depart, I do not believe I should depart and therefore, I'm sentencing Mr. Garcia to the 84 months that the state is requesting with restitution paid to [the lender], state court costs and an adjudication.

On direct appeal to the Fourth District, Garcia claimed the sentencing court imposed a vindictive sentence. *Garcia*, 279 So. 3d at 150. The Fourth District affirmed in part and reversed in part. *Id.* at 151. It found that the trial court committed fundamental error by considering an impermissible sentencing factor—"namely, incidents of misconduct occurring after the charged offense." *Id.* at 150. The Fourth District held that "although the trial court did not impose a vindictive sentence, the State has failed to meet its burden to show that the trial court did not impermissibly rely upon appellant's post-arrest misconduct in sentencing him." *Id.* at 151.

For the proposition that a sentencing court may not consider a defendant's postarrest misconduct, the Fourth District relied on our decision in *Norvil v. State*, 191 So. 3d 406 (Fla. 2016). *Garcia*, 279 So. 3d at 150.[4] It noted that "[c]ourts applying *Norvil* have held that

---

4. This case provides no occasion to reconsider *Norvil*. For one thing, defense counsel in that case preserved an objection to the trial court's consideration of postarrest misconduct. And, also

- 6 -

a trial court may not consider subsequent, uncharged misconduct when sentencing a defendant for the primary offense." *Id.* Declining to find that, as Garcia had argued, the trial court imposed a vindictive sentence, the Fourth District nonetheless reversed on Garcia's alternative theory that the trial court committed fundamental error when it considered impermissible sentencing factors. It found that the State had failed to sustain what the Fourth District characterized as the State's burden "to show that the trial court did not rely on impermissible factors in sentencing," even though "the trial court made no comment indicating that it had considered appellant's subsequent misconduct in imposing sentence." *Id.* at 150 (quoting *Strong v. State*, 254 So. 3d 428, 432 (Fla. 4th DCA 2018)).

## II

Whether it is fundamental error for a trial judge to consider evidence of any postarrest misconduct in fashioning a sentence is a pure question of law, which we review *de novo*. *Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011).

---

unlike this case, that one turned on an interpretation of chapter 921, Florida Statutes (2010).

## A

We have maintained a general rule that an appellate court should confine parties' arguments to those raised in the courts below. *See Ashford v. State*, 274 So. 2d 517, 518 (Fla. 1973) ("It is well established that this Court will not consider issues not presented to the trial court unless fundamental error can be shown."); *Gibson v. State*, 351 So. 2d 948, 950 (Fla. 1977) ("Except where the error is fundamental, an appellate court must confine itself to a review of those questions which were before the trial court and upon which a ruling adverse to the appealing party was made."). We have recognized an exception to the general rule, however, where the error complained of for the first time on appeal is fundamental error. *Ashford*, 274 So. 2d at 518; *Gibson*, 351 So. 2d at 950.

Nobody disputes that Garcia failed to preserve his claim for review with a contemporaneous objection. Garcia's counsel did not object to the State's discussion of his misconduct while on bond at all, let alone on the basis that the court impermissibly considered Garcia's postarrest misconduct. As we have stated previously:

> The requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings. Delay and an unnecessary use of the appellate process result from a failure to cure early that which must be cured eventually.

*Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978). In light of Garcia's failure to preserve the issue, appellate review is conditioned on finding that the trial court's alleged consideration of Garcia's postarrest misconduct constitutes fundamental error.

In the sentencing context, we have found fundamental error very rarely. For example, courts have found such error where courts have imposed an illegal sentence. *See Bain v. State*, 730 So. 2d 296, 305 (Fla. 2d DCA 1999) (reversing a fifteen-year mandatory minimum sentence as an illegal sentence in excess of the statutory maximum despite the lack of objection in the lower court); *Parks v. State*, 765 So. 2d 35, 35-36 (Fla. 2000) (holding the defendant's sentence of twelve years' probation illegal despite the lack of an objection because it exceeded the statutory maximum for the third-degree felonies of which he had been convicted). We have also found fundamental error where a judge implemented an arbitrary

policy of rounding up sentences, *Cromartie*, 70 So. 3d at 564; where the sentencing guidelines used violated the single subject provision of article III, section 6, of the Florida Constitution, *Harvey v. State*, 848 So. 2d 1060, 1064 (Fla. 2003); and where the court imposed a sentence departing upward from the sentencing guidelines but failed to give reasons for doing so, *Thogode v. State*, 763 So. 2d 281, 281-82 (Fla. 2000).

This case is different. The sentencing judge heard argument on a motion for downward departure seeking a sentence of probation. In considering the defendant's amenability to such a sentence, the court considered "all the evidence"—admittedly including evidence about incidents that it previously considered in revoking Garcia's bond. *Garcia*, 279 So. 3d at 150. The sentencing judge gave no indication of having given weight to any arrest or charge supported merely by probable cause.[5] The court had before

_____

5. The U.S. Supreme Court long ago decided that a defendant's conduct, proven by a preponderance of the evidence, may be considered by a sentencing court. *United States v. Watts*, 519 U.S. 148, 156 (1997) ("[W]e have held that application of the preponderance standard at sentencing generally satisfies due process." (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986) ("Like the court below, we have little difficulty concluding that in this case the preponderance standard satisfies due

- 10 -

it, in addition to the evidence that is the subject of this appeal, Garcia's previous conviction for aggravated battery and adjudication of guilt for driving with a suspended license. It had heard, having sat through two trials, evidence about the care with which Garcia's home had been primed for combustibility—and thus maximum danger to his neighbors and first responders. It heard from Garcia's ex-wife regarding his medical issues and about the fact that she had called the police because of his having made

---

process.")), *overruled on other grounds in Alleyne v. United States*, 570 U.S. 99 (2013)). Thus the federal courts of every circuit allow a sentencing judge to consider a defendant's conduct—even if it has been the subject of an acquitted charge—as long as the conduct itself is established by a preponderance of the evidence. *See* Steven M. Salky and Blair G. Brown, *The Preponderance of Evidence Standard at Sentencing*, 29 Am. Crim. L. Rev. 907, 913 n.33 (1992) (collecting cases); *see, e.g., United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997) ("Relevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence."). This reliance on facts supported by a preponderance of the evidence speaks to why consideration of an arrest, standing alone, raises due process concerns: an arrest—again, standing alone—is supported only by a determination of probable cause. Here, of course, the sentencing court did not consider an arrest of Garcia's on any charge, standing alone; it considered his conduct while out on bond, and had indeed made a ruling on evidence relating to that conduct in revoking his bond, prior to sentencing.

intoxicated threats at her door. In light of all these considerations, looking at a sentencing range between 34.8 and 360 months, the court reasoned that a sentence of 84 months was appropriate. We cannot say that this determination reflects the trial court's having committed fundamental error on the order of an illegal sentence. *See Provence v. State*, 337 So. 2d 783, 786 (Fla. 1976) ("We recognize that the constitutional parameters of the trial judge's discretion in the area of sentencing are wide indeed."). That conclusion would fit oddly indeed with settled—and recently reaffirmed—federal law. *See Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) ("There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at an initial sentencing proceeding." (citing *Dean v. United States*, 581 U.S. 62, 66 (2017))); *Williams v. New York*, 337 U.S. 241, 246 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."); *United States v. Booker*, 543

U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.").

## III

Because we do not find fundamental error in Garcia's unpreserved claim, we quash the decision of the Fourth District to the extent it requires that the Respondent be resentenced.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, LAWSON, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

While judges are appropriately vested with latitude in the discretion used to determine appropriate sentences, their discretion is by no means unfettered and must always be exercised subject to proper sentencing considerations and within the applicable sentencing parameters.

In this case, the trial court improperly considered the post-arrest misconduct that Garcia committed while out on bond.

However, I concur with the majority's conclusion that Garcia is not entitled to relief because the trial court's error did not amount to fundamental error, a more stringent standard of review than the harmless error standard that would have applied had a contemporaneous objection been made when the improper evidence was presented.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

    Fourth District – Case No. 4D17-3751

    (Palm Beach County)

Ashley Moody, Attorney General, Tallahassee, Florida, Celia A. Terenzio, Bureau Chief, and Paul Patti, III, Assistant Attorney General, West Palm Beach, Florida,

    for Petitioner

Carey Haughwout, Public Defender, and Claire V. Madill, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

    for Respondent