PER CURIAM.
 

 This case is before the Court on appeal from judgments of conviction for first-degree murder and sentences of death. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm Eaglin’s convictions and sentences.
 

 FACTS
 

 Dwight T. Eaglin, who was serving a life sentence for murder when the crimes occurred in this case, was convicted of the June 11, 2003, murders of correctional officer Darla K. Lathrem and inmate Charles Fuston. The conviction and death sentence of codefendant Stephen Smith, who was tried separately for the murder of Lathrem, was affirmed by this Court and rehearing was denied.
 
 See Smith v. State,
 
 998 So.2d 516 (Fla.2008),
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 2006, 173 L.Ed.2d 1101 (2009) (No. 08-8829). A third code-fendant, Michael Jones, pled guilty to first-degree murder and received a life sentence.
 
 Id.
 

 The evidence at trial established that in 2003, the Charlotte Correctional Institution was undergoing a renovation of the inmate dormitories. That same year, Eag-lin, Smith, and Jones, who were part of a group of inmates permitted to participate in the renovation process, began planning an escape attempt. With regard to the escape plans, the inmates constructed an escape ladder and a metal tool that would hook to the outer lights of the prison, but the tool was destroyed a month before the attempted escape. Eaglin blamed Fuston and John Beaston, another inmate, for destroying the tool.
 

 Two inmates, Kenneth Christopher Ly-kins and Jesse Baker, testified to what they heard about the escape plans. Ly-kins testified that he overheard Eaglin, Smith, and Jones talking about their upcoming escape. Specifically, Eaglin stated that he would kill Fuston before he left because “he didn’t like the way he disrespected him.” Lykins also overheard Eag-lin state that he would kill anyone who tried to stop him from doing what he was going to do. On cross-examination, Ly-kins, a twelve-time convicted felon, was impeached with an affidavit in which he denied knowing anything about the escape or the killing of Lathrem and Fuston. He explained this prior inconsistency by stating he had been concerned with his own safety.
 

 Jesse Baker, another inmate and nine-time convicted felon, also testified to overhearing the escape plans. He specifically heard Eaglin, Smith, and Jones stating that “they would kill any bitch that got in their way.” Further, Baker testified that Eaglin wanted to “straighten” Fuston, which indicated an intent to kill. Baker was impeached with the fact that he suffered from severe depression and was previously housed in the psychiatric dorm and the crisis unit of the prison.
 

 Additional testimony from correctional officers working at the time of the escape attempt established that on June 11, 2003, Eaglin was observed attempting to jump on the outer-perimeter fence of the prison. When officers responded to the scene, Eaglin was sprayed with chemical agents and subdued. Thereafter, Officer La-threm was found in a mop closet, huddled in a fetal position with injuries to her head area. A medium-sized sledgehammer was located near her body. Fuston was located in another cell lying on the floor with blood coming from underneath his head. He was unconscious but still breathing at
 
 *940
 
 that time. Beaston was found conscious in a secured cell with a large wound in the middle of his forehead. Beaston was the only surviving victim of the attacks.
 

 The morning after the attempted escape, Eaglin was questioned regarding the murders. Eaglin stated he wanted the “chair,” and that he “tried to kill those three people.” Eaglin also admitted that he tried to “jump the fence.”
 

 With regard to the injuries suffered by the victims, the medical examiner, Dr. R.H. Imami, testified that Lathrem’s injuries included a hemorrhage in her right eye, two injuries on the right side of her head, and injuries on her face. Dr. Imami found no evidence of defensive wounds or injuries and concluded that skull and brain injuries were the cause of Lathrem’s death. The cause of these injuries was heavy, blunt force trauma. Dr. Imami opined that Lathrem was struck at least three times and that any of the blows would have caused her death. Finally, Dr. Imami stated that she believed the sledgehammer entered into evidence caused the injuries.
 

 Dr. Imami also conducted the autopsy of Fuston. Fuston had injuries to the right and left sides of his face and head, the back of his head, and his mouth, in addition to skull fractures caused by blunt trauma. In total, Fuston suffered three to four fatal blows. Dr. Imami did not see typical defensive wounds but she observed a small skin scrape on the back of Fusion’s left hand. She opined that the scrape could have been caused when he fell or during subsequent medical intervention. Ultimately, Dr. Imami concluded that skull and brain injuries by blunt-force trauma to the head were also the cause of Fusion’s death and that the trauma was caused by a hammer.
 

 Upon the testing of evidence obtained during the investigation of the murders, Lathrem’s DNA was discovered on the sledgehammer that was near her body. Both Lathrem’s and Fusion’s DNA were located on the pants Eaglin wore on the day of the murder. Lathrem’s DNA was also located on Eaglin’s left boot. On cross-examination, defense counsel referred to earlier testimony of a corrections officer who testified that he assisted in removing Lathrem’s body from the mop closet and then escorted Eaglin to the visiting park. The crime laboratory analyst conceded that this scenario presented the possibility of cross-contamination between Lathrem’s blood and Eaglin’s clothes. She also stated that she did not analyze every item sent to her but she matched the DNA profile of Lathrem to DNA found on codefendant Smith’s right shoe.
 

 The defense presented no witnesses but moved for a judgment of acquittal, which was denied by the court. The jury convicted Eaglin of the first-degree murders of Lathrem and Fuston.
 

 During the penalty phase, the State presented evidence of Eaglin’s prior violent felony for which he was incarcerated at the time of these murders. Michael Marr, an assistant state attorney, testified that he had previously prosecuted Eaglin for the first-degree murder of John Frederick Nichols, Jr., who died from multiple stab wounds. On January 10, 2001, Eaglin was sentenced to life imprisonment without the possibility of parole for that murder. The State also presented three victim impact witnesses regarding Officer Lathrem.
 

 The defense presented the testimony of witnesses Daryl McCasland, Lance Henderson, Greg Giddens, James Aiken, and Eaglin himself. The theme of the mitigation presentation was that the conditions at the correctional facility contributed to the occurrence of the crime. McCas-
 
 *941
 
 land, a senior prison inspector, testified that he had several administrative concerns regarding the prison, including the lack of key control. Lance Henderson, a corrections officer working at Charlotte Correctional, testified that he had filed an incident report prior to the murders regarding his concerns about the limited number of officers on duty for the nighttime work detail. Henderson believed the working environment was unsafe.
 

 Greg Giddens, a corrections officer at Charlotte Correctional at the time of the murders, testified that he was also concerned about his safety. He voiced his concerns to the officer in charge. Giddens also stated that the classification of certain inmates was downgraded so they could be in the open population or assigned work detail.
 

 Finally, James Aiken, president of a prison consulting firm, testified that the incident at the prison was facilitated by a failure of systems. He also stated that the classification of Eaglin was not handled properly and that several inmates had access to tools useful for escape activity and for causing violence. The inmate accountability, security staffing, and monitoring systems also failed.
 

 Before Eaglin’s testimony, defense counsel notified the court that they would not be presenting mental mitigation or mitigation evidence as to Eaglin’s childhood. Eaglin then testified that he had been in prison since 2001. He stated that the guards would beat and kill inmates. He also stated that after the murders he was kept in a cell for thirty-four days in boxer shorts with no toilet paper, soap, or toothpaste and the assistant warden told him that he would die in that cell.
 

 The jury recommended that Eaglin be sentenced to death for both murders by a vote of eight to four on each murder. Following a Spencer
 
 [1]
 
 hearing, the court entered its sentencing order. The court found the following aggravators as to the murder of Lathrem: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment; (2) Eaglin had a prior violent felony conviction; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; (4) the murder was cold, calculated, and premeditated (CCP); and (5) the victim was a law enforcement officer engaged in the performance of legal duties (merged with escape from custody). As to the murder of Fuston, the trial court found: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment; (2) the defendant had a prior violent felony conviction; and (3) the murder was CCP. In mitigation, the court found after reviewing a presentence investigation (PSI) report that “Eaglin suffered from a severely abusive childhood with a severely dysfunctional family.” This mitigator was given some weight. However, the court rejected the proposed mitigators stemming from the allegations of prison negligence. Finding that the aggravators outweighed the mitigators, the court sentenced Eaglin to death.
 

 ANALYSIS
 

 In this direct appeal, Eaglin raises six claims.
 
 [2]
 
 We address each in turn. In
 
 *942
 
 addition to the claims raised by Eaglin, we review the sufficiency of the evidence supporting his convictions and the proportionality of the sentences imposed in this case.
 

 GUILT-PHASE ISSUES
 

 Impeachment of State Witness
 

 In his first claim on appeal, Eag-lin asserts that the trial court erred in prohibiting defense counsel from impeaching fellow inmate Jesse Baker with a disciplinary report filed against him for lying to a corrections officer. Eaglin claims the impeachment was relevant because the lie for which Baker had previously been disciplined would have been important to the jury in assessing the trustworthiness of his trial testimony. This Court has repeatedly recognized that “[t]he right of cross-examination is ‘implicit in the constitutional right of confrontation’ ” guaranteed by both the federal and state constitutions.
 
 Garcia v. State,
 
 816 So.2d 554, 561 (Fla.2002) (quoting
 
 Conner v. State,
 
 748 So.2d 950, 955 (Fla.1999)).
 

 Eaglin relies on section 90.610, Florida Statutes (2006), as a basis for his claim that the impeachment should have been permitted. Section 90.610 states:
 

 (1) A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment. ...
 

 § 90.610(1), Fla. Stat. (2006). In the context of section 90.610(1), this Court has defined a conviction as “an adjudication of guilt or judgment of conviction by the trial court.”
 
 State v. McFadden,
 
 772 So.2d 1209, 1216 (Fla.2000). In Eaglin’s case, it is clear that the report was not a “conviction” administered through a judicial court process as defined by this Court, but instead was an internal reprimand.
 
 See Jackson v. State,
 
 545 So.2d 260, 264 (Fla.1989) (concluding that a police department reprimand was not a criminal conviction as contemplated by section 90.610).
 

 In support of his argument of trial court error, Eaglin also cites to the decisions of the Second District Court of Appeal in
 
 Williams v. State,
 
 386 So.2d 25 (Fla. 2d DCA 1980), and
 
 Cliburn v. State,
 
 710 So.2d 669 (Fla. 2d DCA 1998). In both cases, the Second District held that the trial court erred in precluding the defense from cross-examining the main prosecution witness on the basis of a prior false report to the police. Yet, even assuming that a false reporting exception to section 90.610 should be recognized, an issue we do not address in this case,
 
 [3]
 
 the trial court did not
 
 *943
 
 err in refusing to allow the impeachment of Baker with his prior disciplinary report. At trial, Eaglin did not establish the circumstances underlying the disciplinary report or whether the lying involved circumstances similar to the facts in
 
 Williams
 
 or
 
 Clibwrn
 
 which could conceivably be relevant for impeachment purposes.
 

 Any limitation on cross-examination is reviewed for abuse of discretion.
 
 See McDuffie v. State,
 
 970 So.2d 312, 314 (Fla.2007). In this case, the trial court properly allowed cross-examination as to the fact that Baker suffered from severe depression and had previously been housed in the psychiatric ward and the crisis unit of the prison. We conclude that the trial court did not abuse its discretion in limiting additional cross-examination as to the prior disciplinary report. Moreover, the jury was aware through direct examination that Baker had been convicted of nine prior felonies. Accordingly, we reject the claim of reversible error on this issue.
 

 Sufficiency of the Evidence
 

 Although Eaglin has not challenged the sufficiency of the evidence supporting his convictions, this Court must conduct an independent review of the record for sufficiency of the evidence.
 
 Carter v. State,
 
 980 So.2d 473, 480 (Fla.),
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 400, 172 L.Ed.2d 292 (2008); Fla. R.App. P. 9.140®. We find that sufficient evidence exists to support Eaglin’s first-degree murder convictions for the murders of both Lathrem and Fu-ston. Here, the State presented evidence through the testimony of two witnesses that Eaglin was overheard planning his escape from prison and stating that he planned to kill Charles Fuston before his escape. He also stated that he would kill “any bitch” that prevented him from escaping. Correctional Officer Mark Pate testified that on the night of the murders, he observed Eaglin attempting to climb the perimeter fence of the prison. Pate also noticed a sledgehammer near where he discovered Lathrem’s body. Another officer discovered Fuston unconscious in a cell with a wound to his head. After an autopsy, the medical examiner concluded that a hammer caused the fatal injuries to both Lathrem and Fuston. Testing conducted on the sledgehammer found near Lathrem’s body revealed that Lathrem’s DNA profile was on the hammer. Further testing on Eaglin’s pants and boots also revealed that both Lathrem’s and Fusion’s DNA profiles were located on the pants and Lathrem’s DNA profile was located on Eaglin’s left boot. Finally, the day after the murders, Eaglin stated, “I tried to kill those three people.” Based on the foregoing, competent, substantial evidence exists to support Eaglin’s convictions.
 

 PENALTY-PHASE ISSUES
 

 Exclusion of Mitigating Evidence and Failure to Consider Evidence of Security Lapses and Supervision Failures as Mitigating
 

 We next turn to Eaglin’s claims of penalty phase error. His first claim relates to an asserted error in the trial court’s exclusion of a videotape interview of a former guard trainee from the Charlotte Correctional Institution. We combine our discussion of the alleged error in the exclusion of this interview with Eaglin’s claim that the trial court erred in rejecting evidence of security lapses and supervision and systems failures at the prison as mitigation.
 

 Regarding the particular interview excluded, the interview recounted how a guard trainee resigned from her position after she was requested to conduct a head count by herself of sixty-five inmates. Eaglin claims that this videotape was rele
 
 *944
 
 vant mitigating evidence as to the ongoing problems with the management at the prison. Although the trial court allowed other evidence of the asserted mismanagement, the court excluded this particular videotape, finding that the subjective feelings of the guard trainee were not relevant.
 

 We recognize the requirement of the United States Supreme Court to liberally permit any conceivable mitigation.
 
 See Lockett v. Ohio,
 
 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion) (“[T]he sentencer, in all but the rarest kind of capital case, [shall] not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death.”). However, the mitigating evidence must be
 
 “relevant
 
 to the defendant’s character, his prior record, and the circumstances of the offense in issue.”
 
 Hess v. State,
 
 794 So.2d 1249, 1269 (Fla.2001) (emphasis added) (quoting
 
 Herring v. State,
 
 446 So.2d 1049, 1056 (Fla.1984));
 
 see also Farina v. State,
 
 937 So.2d 612, 619 (Fla.2006) (“Mitigating evidence must meet a threshold of relevance.”).
 

 We affirm the trial court’s ruling in excluding the videotape because this type of evidence would not properly be considered mitigating. Further, this particular interview would not be admissible because it contains nothing more than the subjective views of the person being interviewed, who worked as a guard trainee during an unrelated incident. The unidentified witness’s statements had nothing to do with the facts or circumstances of this crime, nor could they by any stretch of the imagination be considered admissible mitigating evidence going to Eaglin’s background, character, prior record, or the circumstances of this offense. Thus, we find that the trial court did not err in excluding the videotape evidence.
 

 Moreover, the similar testimonial evidence of security lapses, systems failures, and supervision failures at the Charlotte Correctional Institution was properly rejected as mitigation by the trial court. In rejecting this mitigation,
 
 [4]
 
 the trial court relied on this Court’s decision in
 
 Howell v. State,
 
 877 So.2d 697 (Fla.2004), which stated that “[ejvidence is mitigating if, in fairness or in the totality of the defendant’s life or character, it may be considered as extenuating or reducing the degree of moral culpability for the crime committed.”
 
 Id.
 
 at 704 (quoting
 
 Merck v. State,
 
 763 So.2d 295, 298 (Fla.2000)).
 

 The trial court was correct in its reliance on
 
 Howell.
 
 Here, any negligence on the part of the prison does not reduce the moral culpability of Eaglin for the murders of Lathrem and Fuston. Eaglin has presented no case law recognizing third-party negligence as a factor in lessening the fault of a defendant. Thus, we conclude that the trial court did not err in rejecting the various security, systems, and supervision failures at the prison as nonstatutory mitigation.
 

 Failure to Present Jury and Trial Court with Available Mitigation and Trial Court’s Failure to Consider Mitigation Contained in the Record
 

 In his next issue on appeal, Eaglin contends that the outcome of his penalty
 
 *945
 
 phase is unreliable because available mitigating evidence was not presented to the jury or the trial court. Further, Eaglin argues that the trial court failed to adequately consider all available mitigation that was present in the record.
 

 As to the claim that all available mitigation was not presented, the record affirmatively establishes that Eaglin instructed his counsel to forego the presentation of evidence regarding his childhood. As to mental mitigation, defense counsel indicated to the court that he felt that the evidence should not be presented to the jury. Although counsel did not specifically state his reasons for his decision to forego mental mitigation, the record demonstrates that Eaglin agreed with his counsel’s decision.
 

 Eaglin now asserts that the jurors were unable to fulfill their duty to determine the validity and weight of the aggravating and mitigating evidence because they were not made aware of all available mitigating evidence. Although Eaglin frames his claim as one of an unreliable penalty phase and does not directly allege that his counsel erred in his decision not to present mental health and background mitigation, in effect this claim is actually one of ineffective assistance of counsel. Generally, claims of ineffective assistance of counsel are not cognizable on direct appeal.
 
 Bruno v. State,
 
 807 So.2d 55, 63 (Fla.2001). However, such a claim may be raised on direct appeal when the ineffectiveness is apparent on the face of the record.
 
 Id.
 
 at 63 n. 14.
 

 In this case, any alleged ineffectiveness is not apparent from the face of the record. In fact, the record demonstrates that the waiver of mitigation concerning his childhood was prompted by Eaglin himself because he did not want his family to be involved. It also appears from the record that counsel discussed the reasons for not presenting mental mitigation to the jury with Eaglin before a decision was made. Moreover, both Eaglin and the State point out in their briefs that counsel had been “working on mental mitigation continuously and [had] been since day one” and had “been all over the country developing social information for purposes of phase II.” Thus, because a claim of ineffective assistance of counsel does not appear from the face of the record, we do not decide this claim at this stage of the proceedings.
 
 See Gore v. State,
 
 784 So.2d 418, 438 (Fla.2001) (concluding that ineffectiveness was not apparent on the face of the record where the record demonstrated that counsel was reasonable in evaluating potential mitigating evidence and made strategic decisions in declining to call witnesses).
 

 In addition to his claim that the jury was unaware of critical mitigating evidence, Eaglin also asserts that the trial court failed to consider all available mitigation in the record.
 
 [5]
 
 Specifically, he asserts that in the sentencing order, the court did not address the information regarding Eaglin’s substance abuse in his teenage years or the mental disorder that plagued him. We reject this claim.
 

 First, in this case, Eaglin did not waive all mitigation. We have explained the distinction between the waiver of the right to present mitigation and the decision to limit mitigation.
 
 See Boyd v. State,
 
 910 So.2d 167, 189 (Fla.2005). Importantly, we have extended the duty of the trial court to consider all mitigating evidence contained
 
 *946
 
 in the record to the extent it is “believable and uncontroverted,”
 
 Muhammad v. State,
 
 782 So.2d 343, 363 (Fla.2001), only to cases in which there is a complete waiver of all mitigation. Second, despite the fact that Eaglin did not want to present evidence of his childhood, the trial court did in fact accord “some weight” to the mitigating factor that “Eaglin suffered from a severely abusive childhood with a severely dysfunctional family.”
 

 The additional mitigation Eaglin asserts should have been considered by the trial court consisted of information in the PSI report ordered by the court that Eaglin had abused alcohol and cocaine in his younger years along with the prescription drug Prozac. Because Eaglin was unwilling to cooperate in the presentence investigation,
 
 [6]
 
 this information was taken from a Florida Department of Corrections (DOC) report relating to the prior murder committed by Eaglin. Eaglin also alleges that the trial court failed to mention in its sentencing order a letter contained in the record from Dr. Harry Krop, a psychologist, in which Eaglin was diagnosed with a “serious psychiatric disorder.” The letter was attached to Eaglin’s “Notice of Mental Mitigation” filed before counsel made the decision not to offer mental health mitigation.
 

 The trial court did not err in failing to accord weight to mitigation that was neither presented to the trial court nor argued as mitigation. As to the information regarding Eaglin’s substance abuse, this asserted mitigation consists of double hearsay, as it appears in the PSI report based on a DOC report. Further, considering the nature of the crime for which Eaglin was charged and the fact that he was imprisoned for a prior murder, any alleged alcohol or substance abuse would constitute minimal mitigation under the circumstances.
 

 As to the failure to consider the letter from Dr. Krop regarding Eaglin’s mental state, counsel decided to forego the presentation of mental mitigation because counsel felt it “would be on the dangerous side as far as the jury [was] concerned.” In light of this affirmative decision not to present any alleged mental mitigation, the trial court did not err in failing to consider Dr. Krop’s letter in its sentencing order. Accordingly, based on the above, we reject all aspects of this claim of error.
 

 Lack of Remorse
 

 Eaglin next asserts that the trial court erred in considering Eaglin’s alleged lack of remorse in sentencing him to death. In the sentencing order, the trial court stated: “Finally, the Court recalls that this Defendant testified during the penalty phase and again in the
 
 Spencer
 
 hearing. At neither time did he express anything like genuine remorse. His attitude bordered on arrogance.” The court then concluded that the aggravators in Eaglin’s case greatly outweighed the mitigators and sentenced him to death for the murders of Lathrem and Fuston.
 

 It is well settled that lack of remorse is inadmissible as an aggravating factor in capital cases.
 
 See Tanzi v. State,
 
 964 So.2d 106, 114 (Fla.2007). However, lack of remorse can be admitted to rebut evidence presented by a defendant of remorse or other mitigating factors such as rehabilitation.
 
 See Singleton v. State,
 
 783 So.2d 970, 978 (Fla.2001). Thus, in determining whether the trial court erred in considering any lack of remorse on the part of Eaglin, we must determine wheth
 
 *947
 
 er Eaglin presented any evidence during his penalty phase as to remorse for the dual murders or the potential for rehabilitation during incarceration.
 

 Our review of the record does not reveal that any evidence as to remorse or rehabilitation was presented by the defense. Although the State argues in its answer brief that “the trial judge considered Appellant’s testimony as a possible attempt to establish remorse as a nonstatutory mitigating factor,” any indication of remorse or ability for rehabilitation was not apparent in Eag-lin’s testimony at either the penalty phase or the
 
 Spencer
 
 hearing. Thus, the trial court erred by addressing the issue of remorse where the issue was not raised by Eaglin.
 

 However, we are confident that any error was harmless beyond a reasonable doubt. There is no evidence in the record that the jury considered any alleged lack of remorse in delivering its advisory sentence because it was not argued by the State.
 
 Cf. Poole v. State,
 
 997 So.2d 382 (Fla.2008) (holding that combination of errors, including prosecutor’s error in questioning witnesses on defendant’s lack of remorse, warranted a new penalty phase because the errors had the effect of unfairly prejudicing the defendant in the eyes of the jury). Further, as to any possible effect on the trial court’s sentencing decision, the court’s reference to Eag-lin’s lack of remorse was brief and there is no indication that the trial court considered lack of remorse in aggravation. Moreover, when considering the discussion on the five statutory aggravators found (two of which were merged) as to victim Lathrem and the three statutory aggrava-tors found as to victim Fuston, the lack of any statutory mitigation, and the relatively minimal nonstatutory mitigation, we can safely state that any error was harmless beyond a reasonable doubt.
 
 See Melton v. State,
 
 949 So.2d 994, 1015 (Fla.2006) (concluding that the trial court’s brief reference to lack of remorse in order denying postconviction relief was harmless error in light of the detailed and lengthy discussion on the mitigators and aggravators);
 
 Smithers v. State,
 
 826 So.2d 916, 930-31 (Fla.2002) (witness’s brief reference to lack of remorse was of minor consequence). Thus, we conclude that any trial court error in referring to Eaglin’s lack of remorse does not require a resentencing.
 

 CCP Aggravator
 

 Eaglin next asserts that the evidence presented at his trial was insufficient to support the CCP jury instruction and aggravating circumstance. Eaglin argues that the trial court’s findings were in error, as there was insufficient evidence to meet the heightened premeditation requirement of the CCP aggravator.
 
 [7]
 

 In deciding whether a lower court erred in its finding of an aggravator, this Court does not reweigh the evidence to determine whether an aggravator was proven beyond a reasonable doubt but instead “review[s] the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.”
 
 Franklin v. State,
 
 965 So.2d 79, 98 (Fla.2007) (quoting
 
 Willacy v. State,
 
 696 So.2d 693, 695 (Fla.1997)). In order to find CCP as an aggravating factor:
 

 
 *948
 
 [T]he jury must determine that the killing was a product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); and that the defendant exhibited heightened premeditation (premeditated); and that the defendant had no pretense of moral or legal justification.
 

 Anderson v. State,
 
 863 So.2d 169, 176-77 (Fla.2003) (quoting
 
 Jackson v. State,
 
 648 So.2d 85, 89 (Fla.1994)). We agree that a “plan to kill cannot be inferred solely from a plan to commit, or the commission of, another felony.”
 
 Philmore v. State,
 
 820 So.2d 919, 933 (Fla.2002) (quoting
 
 Geralds v. State,
 
 601 So.2d 1157, 1163 (Fla.1992)). Therefore, a finding of the aggravator based solely on evidence of a well-planned escape would be in error. However, CCP can also be established by evidence of “advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course.”
 
 Davis v. State,
 
 859 So.2d 465, 479 (Fla.2003). We conclude that under this definition, the trial court in this case did not err in providing an instruction on and in finding the CCP aggravator in this case.
 

 Here, the facts demonstrate that in planning their escape, Eaglin and his cohorts stated that “they would kill any bitch that got in their way.” Eaglin then procured a sledgehammer from the construction project, struck Lathrem at least three times, and hid her body in a mop closet. Moreover, the medical examiner noted the lack of any defensive wounds on Lathrem. Because there was evidence of advance procurement of a weapon, lack of resistance, and the appearance of a killing carried out as a matter of course,'we find that competent, substantial evidence supports the trial court’s finding of CCP for the murder of Lathrem.
 

 As to the murder of Fuston, we also find no error in the trial court’s application of the CCP aggravator. First, Eaglin told other inmates that he would “straighten Charlie,” meaning that he would kill Fu-ston. Eaglin then obtained a sledgehammer from the construction project to carry out the killing. Finally, evidence established that the murder of Fuston was unnecessary to accomplish the escape, yet Eaglin entered Fusion’s cell and struck him several times before attempting his escape. We have previously found the heightened premeditation requirement of the CCP aggravator “where a defendant has the opportunity to leave the crime scene and not commit the murder but, instead, commits the murder.”
 
 Walker v. State,
 
 957 So.2d 560, 582 (Fla.2007) (quoting
 
 Alston v. State,
 
 723 So.2d 148, 162 (Fla.1998)).
 

 We further reject Eaglin’s contention that he had a pretense of justification for his actions. A “pretense of justification” is “any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.”
 
 Banda v. State,
 
 536 So.2d 221, 225 (Fla.1988). Eaglin’s argument is based on his penalty phase testimony that the guards were never imprisoned for beating and killing inmates. Eaglin further testified that he was attempting to escape his unlawful imprisonment.
 

 Here, Eaglin’s belief that his imprisonment was unlawful did not negate the cold and calculating nature of either murder. Eaglin has failed to point to any evidence in the record that he was threatened by either Lathrem or Fuston. In fact, the evidence supported the conclusion that the
 
 *949
 
 attack on Fusion was retaliatory after Fu-ston allegedly destroyed a tool intended to aid in Eaglin’s escape. Moreover, Eaglin has not alleged that he was the victim and Lathrem the perpetrator of any of the alleged attacks on the inmates by the prison guards. Because Eaglin has not demonstrated that he acted in response to a threat from the two victims, his claim of acting with a pretense of justification must fail.
 
 See Cox v. State,
 
 819 So.2d 705, 721 (Fla.2002) (rejecting pretense of legal or moral justification claim where there was no evidence that the defendant was the subject of any threat from the victim).
 

 Ring Claim
 

 In his last issue raised on appeal, Eaglin contends that Florida’s death penalty statute violates the constitutional requirements of
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which require that a death-qualifying aggravating circumstance be alleged in the indictment and found by a jury beyond a reasonable doubt. Eaglin concedes that this Court has previously rejected similar arguments but requests that the Court revisit this issue and raises the issue to preserve it for possible review in another forum. As acknowledged by Eaglin, this Court has denied similar claims that Florida’s capital sentencing scheme is unconstitutional in failing to require that aggravating circumstances be charged in the indictment and require that a jury make findings as to specific aggravating factors.
 
 See, e.g., Winkles v. State,
 
 894 So.2d 842, 846 (Fla.2005). Further, where the prior violent felony aggravator was present in this case for both murders, Eaglin’s claim based on
 
 Ring
 
 is without merit.
 
 See Peterson v. State,
 
 2 So.3d 146, 160 (Fla.2009) (“This Court has repeatedly held that where a death sentence is supported by the prior violent felony aggravating factor ... Florida’s capital sentencing scheme does not violate
 
 Ring.”); Johnston v. State,
 
 863 So.2d 271, 286 (Fla.2003) (concluding that a “prior violent felony conviction alone satisfies constitutional mandates because the conviction was heard by a jury and determined beyond a reasonable doubt”). Thus, we reject this claim based on our precedent.
 

 Proportionality of Death Sentence
 

 Eaglin does not directly challenge the proportionality of his death sentence.
 
 [8]
 
 However, this Court is obligated to conduct a proportionality review of each sentence of death. This review is not a comparison of the number of aggravators against the number of mitigators.
 
 Williams v. State,
 
 967 So.2d 735, 765 (Fla.2007), ce
 
 rt. denied,
 
 — U.S. -, 128 S.Ct. 1709, 170 L.Ed.2d 519 (2008). Instead, this Court must “engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases.”
 
 Salazar v. State,
 
 991 So.2d 364, 379 (Fla.2008) (quoting
 
 Porter v. State,
 
 564 So.2d 1060, 1064 (Fla.1990)),
 
 cert.
 
 denied, - U.S. -, 129 S.Ct. 1347, 173 L.Ed.2d 614 (2009).
 

 In this case, the trial court found five aggravators (two of which were merged) as to the murder of Lathrem: (1) that the capital felony was committed while Eaglin was under sentence of imprisonment; (2)
 
 *950
 
 Eaglin had a prior violent felony conviction; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; (4) the murder was CCP; and (5) the victim was a law enforcement officer engaged in the performance of her official duties (merged with escape from custody). Concerning the murder of Fuston, the trial court found three aggravators: (1) the capital felony was committed while under sentence of imprisonment; (2) Eaglin had a prior violent felony conviction; and (3) the murder was CCP. The court did not find any statutory mitigators but gave some weight to the single nonstatutory mitigator of abusive childhood.
 

 We conclude that Eaglin’s sentences are not disproportionate compared to other capital cases. The most significant comparison is the sentence imposed in the case of Eaglin’s codefendant, Stephen Smith. In
 
 Smith v. State,
 
 998 So.2d 516 (Fla.2008), the trial court found the same aggravatoi’s as in Eaglin’s case as to the murder of Lathrem, but found additional mitigation— Smith’s background, expression of remorse, and mental and emotional health issues. Although the evidence demonstrated that Smith did not commit the killing of Lathrem, this Court concluded that the death sentence was proportionate.
 
 Id.
 
 at 520, 528.
 

 In
 
 Kilgore v. State,
 
 688 So.2d 895 (Fla.1996), another prison murder committed by an inmate previously sentenced to life imprisonment, the trial court found two aggravators: (1) the murder was committed while the defendant was under sentence of imprisonment; and (2) the defendant had a prior violent felony conviction.
 
 Id.
 
 at 897. In mitigation, the court found the two statutory mitigators of extreme mental or emotional disturbance and impairment of capacity to conform conduct to requirements of the law.
 
 Id.
 
 The court also found three nonstatutory mitigators but sentenced the defendant to death, noting the preparation involved in the murder, including the facts that the murder weapon was borrowed and the entry into the victim’s dormitory was planned.
 
 Id.
 
 This Court affirmed the imposition of death.
 
 Id.
 
 at 901. In this case, the defendant was directly responsible for the murder of two individuals and a vicious attack on a third person. Weighty aggravation and insubstantial mitigation were found for both murders. Based on a comparison of the circumstances of this case with the above cases, we conclude that Eaglin’s death sentences are proportionate.
 

 CONCLUSION
 

 Based on the foregoing, we affirm Eag-lin’s convictions and sentences of death.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and LABARGA, JJ., concur.
 

 PERRY, J., did not participate.
 

 [1]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).
 

 [2]
 

 . Eaglin claims: (1) the trial court erred in precluding defense counsel from impeaching a State witness; (2) the trial court erred in refusing to admit into penalty phase evidence the videotape of an interview of a former guard trainee; (3) the jury and the trial court were not presented with available mitigation evidence and the trial court failed to consider all mitigating evidence available in the rec
 
 *942
 
 ord; (4) the trial court erred in using Eaglin's supposed lack of remorse against him in sentencing him to death; (5) the trial court erred in giving an instruction on and finding the CCP aggravator; and (6) Florida's death penalty statute is unconstitutional.
 

 [3]
 

 . We currently have pending in this Court the case of
 
 Pantoja v. State,
 
 990 So.2d 626 (Fla. 1st DCA 2008),
 
 review granted,
 
 No. SC08-1879, 13 So.3d 468 (Fla. Jan. 9, 2009), in which the First District certified conflict with the Second District’s decision in
 
 Jaggers v. State,
 
 536 So.2d 321 (Fla. 2d DCA 1988), which recognized a "false reporting” exception to section 90.610 and relied, in part, on the decision in
 
 Williams. See Pantoja v. State,
 
 No. SC08-1879, 13 So.3d 468 (Fla. order accepting jurisdiction filed Jan 9, 2009). Even though the First District has generally rejected a false reporting privilege, the First District has also acknowledged that "due process may require germane cross-examination of a witness regarding a prior incident of false reporting.”
 
 Roebuck v. State,
 
 953 So.2d 40, 44 (Fla. 1st DCA 2007). However, we do not consider such an argument to be viable under the circumstances of this case.
 

 [4]
 

 . Specifically, Eaglin requested that the court consider as mitigation the following: inmate classification systems failure, tool controls systems failure, key control systems failure, allowing inmate mobility, inmate accountability systems failure, construction supervision failure, security staffing systems failure, staff supervision systems failure, and monitoring systems failure.
 

 [5]
 

 . Eaglin also claims that “the court was not provided with a fully-developed case in mitigation." Similar to Eaglin's claim regarding the jury's awareness of mitigating evidence, this claim appears to be one of ineffective assistance, and thus cannot be properly raised in this direct appeal.
 

 [6]
 

 . Specifically, when officers went to interview Eaglin for the report, Eaglin stated, "I don’t want to talk to you. I am going to Rec.”
 

 [7]
 

 . Although not dispositive, we note that the CCP aggravator was also found in codefen-dant Smith’s case as to the murder of La-threm. However, the finding of CCP was not raised on appeal in that case.
 
 See Smith v. State,
 
 998 So.2d 516 (Fla.2008),
 
 cert. denied,
 
 - U.S. -, 129 S.Ct. 2006, 173 L.Ed.2d 1101 (2009).
 

 [8]
 

 . Eaglin does allege that this Court is unable to conduct a proportionality review because the jury and trial court were not presented with all available mitigating evidence. However, as stated previously, we conclude that there was no error in the trial court’s failure to consider the remaining mitigating evidence in the record.