# Supreme Court of Florida

———————

No. SC20-472

———————

**JESSE BELL,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

February 3, 2022

PER CURIAM.

Jesse Bell appeals his judgment of conviction for first-degree murder and sentence of death. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm in all respects.

## BACKGROUND

In May 2019, Bell and his codefendant Barry A. Noetzel—cellmates at Mayo Correctional Institution—formulated a 12-step plan, entitled "Countdown to [E]xtention" [sic] (Plan), to murder

Mayo Correctional Officer James Newman as well as a fellow inmate.[1]  The Plan read as follows:

1. Get on vegan diet
2. Get multiple tools
3. Get diagram of area
4. Find a gofer.
5. Baby powder?
6. Patience!!!!
7. Pick a dick sucker
8. Background check on dick sucker.
9. Pick a date
10. Commence dry runs-rehearsals.
11. Exicute [sic]!
12. Work on spelling!!

Over the next month, Bell and Noetzel carried their plan into effect.  They switched to a vegan diet to gain greater access to the area of the kitchen where Officer Newman worked.  They recruited other inmates to scout out the layout of the kitchen where they intended to carry out Officer Newman's murder.  They obtained pieces of fence and metal, which they fashioned into sharp objects resembling ice picks.  As for the inmate to be killed, Bell and Noetzel selected Donald H. Eastwood Jr.—whom they believed to be homosexual and a child molester.

---

1.  Bell later confessed that he and Noetzel intended to murder the inmate as practice for murdering Officer Newman.

Bell and Noetzel selected a date for carrying out the murders and, consistent with their plan, invited Eastwood to their cell for a cup of coffee. Once Eastwood arrived, Noetzel—who was sitting on the toilet pretending to play a game on his tablet—invited him to look at his tablet screen. When Eastwood leaned over to look at the screen, Bell placed him in a chokehold while Noetzel retrieved a makeshift knife and stabbed Eastwood in the left eye.

Eastwood passed out from the attack. Leaving the knife in Eastwood's eye, Noetzel hung up a curtain to prevent others from seeing into the cell. Eastwood regained consciousness, attempted to stand, and asked Bell and Noetzel what he had done to provoke the attack. Bell choked Eastwood again, causing him to again lose consciousness. At that point, either Bell or Noetzel pulled the knife out of Eastwood's left eye and stabbed him in his right eye.

Eastwood attempted to sit up. However, Bell "cranked down" on Eastwood's neck and held him down. When Bell heard Eastwood make another noise, he choked him a third time until Eastwood's face turned purple. Finally, Bell pushed Eastwood's face into a pool of his own blood to ensure he was dead.

After confirming Eastwood to be dead, Bell and Noetzel

shoved his body between their bunks, covered it with a blanket, cleaned up the blood, and removed the curtain. They then hung up a sign in their cell, which read, "GOD HATES FAGS. FAGS HATE GOD! KILL ALL FAGS AND CHO-MOES! (And Any C.O.'s Who F*ck with You!).[2]

As planned, Bell and Noetzel then made their way to the cafeteria and stabbed Officer Newman with another homemade knife. Other officers intervened and thwarted the attack. Officer Newman survived the assault.

Thereafter, Bell confessed—on multiple occasions—to murdering Eastwood and stabbing Officer Newman. These interviews were recorded.

Ultimately, a grand jury indicted Bell and Noetzel jointly for five offenses—one count of first-degree murder, attempted murder of a correctional officer with a deadly weapon, conspiracy to commit first-degree murder, and two counts of possession of contraband in a prison. On the first-degree murder count, the State sought the death penalty.

---

2. "C.O." means correctional officer.

Following the indictment, Bell expressed his desire to proceed pro se.  The trial court conducted a detailed *Faretta*[3] inquiry and found Bell competent to represent himself in the proceedings.

At a later hearing, Bell announced his intent to enter a no contest plea to the charges.  The State gave a factual basis for Bell's first-degree murder charge as well as for each of the additional charged offenses.  Bell did not object to the factual basis.  The trial court then accepted Bell's plea and adjudicated him guilty of the charged offenses.  After accepting the plea, the trial court engaged Bell in the following dialogue:

> **THE COURT:** All right.  Before we proceed to sentencing, which will be at another day, do you understand at that proceeding it will be either be before a jury or before the Court and the [S]tate will be required to present evidence sufficient as indicated to you that there are aggravating factors to support the imposition of the death penalty.  You understand that?
> **BELL:** Yes, sir.
> **THE COURT:** You have the right to call witnesses at that proceeding in mitigation.  Do you understand that?
> **BELL:** Yes, sir.
> **THE COURT**: Do you have witnesses that you wish to call?
> **BELL:** No, sir.
> **THE COURT:** Do you wish to testify at that

---

3.  *Faretta v. California*, 422 U.S. 806 (1975).

proceeding?
    **BELL:** Yes, sir.

Bell ultimately waived his right to a penalty-phase jury. Following the completion of a competency evaluation, the court conducted a consolidated penalty phase and *Spencer*[4] hearing. At the hearing, the State sought to prove five aggravating circumstances, including that Bell was previously convicted of a felony involving the use or threat of violence to a person, that the capital felony was committed to disrupt or hinder the lawful exercise of a government function or the enforcement of laws, and that the capital felony was especially heinous, atrocious, or cruel.

To prove these aggravators, the State called several witnesses. First, the State called Captain Colin Woodall, who responded to the attack on Officer Newman. According to Captain Woodall, Officer Newman was slumped over and bleeding from several stab wounds. Captain Woodall also spoke to Bell, who informed him that Eastwood's body could be found in the cell. Captain Woodall proceeded to the cell and found Eastwood's body.

---

4. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

Next, the State called the law enforcement officers to whom Bell and Noetzel confessed. Through these witnesses, the State introduced the recorded confessions.

In addition, the State called the medical examiner who testified that Eastwood's cause of death was homicide brought about by "sharp force trauma to the left eye and brain with neck compression." He further explained that the stab wound to Eastwood's left eye was deep—penetrating into the frontal lobe of the brain—and very painful. According to the medical examiner, given the amount of blood on Eastwood's face and chest, his "heart was pumping vigorously" during the attack. Thus, it was "possib[le]" Eastwood was alive to experience the manual strangulation.

Once the State rested its case, Bell took the stand. He offered the following testimony in mitigation:

> I had a pretty good childhood, really no abuse, nothing to speak of.
> I've been in prison a long time. My behavior hasn't been really good in prison, but I've never assaulted any officers besides Newman, which was brought up. I had my reasons for that. He knows what they are.

Well, I suffer from depression and I would like the competency doctor's diagnosis to be put into evidence.

. . . .

I came forward. I pled guilty. I've had good behavior in court. My family loves me. I've had good prison behavior since this incident. I haven't had any DRs[5] or any kind of problems with the officers.

. . . .

I've never been a good person, but I've always been an honest person.

Bell then entered his competency report into evidence and presented a closing argument in which he objected to the heinous, atrocious, and cruel aggravator, arguing that it was "too vague." He further posited that it would be "unconstitutional" and "cruel and unusual punishment" to execute him by lethal injection since he would know of his impending death for 20 or 30 seconds beforehand.

Bell also argued that the State failed to prove that he disrupted a lawful exercise of law enforcement. Finally, Bell argued that Officer Newman's attack could not support the prior violent felony aggravator, because it was a "doubling of aggravators" used to "inflame" the court.

---

5. The term "DRs" likely refers to prison disciplinary reports.

At the end of the consolidated hearing, the trial court took the issue of sentencing under advisement, scheduled a sentencing hearing, and ordered the preparation of a presentence investigation (PSI) "[o]ut of the abundance of caution[.]" Citing *Muhammad*,[6] Bell objected to the PSI, arguing it was unnecessary since he did not waive mitigation. Overruling that objection, the trial court adhered to its initial decision on the PSI.[7]

At the sentencing hearing, the trial court announced its decision to impose the death penalty for the murder of Eastwood. In its detailed sentencing order, the court found that the State proved the existence of the following aggravators beyond a reasonable doubt, with the noted weight: (1) the capital felony was committed by a person previously convicted of a felony and under

---

6. *Muhammad v. State*, 782 So. 2d 343 (Fla. 2001).

7. The PSI detailed Bell's criminal, educational, work, and family history. It further explained that Bell was in good health but had been "treated for depression." It also contained a statement from Bell that he had never used illegal drugs. Though the PSI was not particularly thorough, it included the type of information a comprehensive PSI requires. *See* Fla. R. Crim. P. 3.710(b) (explaining that a comprehensive PSI describes a defendant's "previous mental health problems (including hospitalizations), school records, and relevant family background").

sentence of imprisonment (great weight); (2) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person (great weight); (3) the capital felony was especially heinous, atrocious, or cruel (HAC) (very great weight); and (4) the capital felony was committed in a cold, calculated, and premeditated manner (CCP) without any pretense of moral or legal justification (very great weight).  However, the court found that the State failed to prove beyond a reasonable doubt that the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws, and accordingly assigned that aggravator no weight.

As for mitigation, the trial court observed:

> [Bell] admitted his Competency Evaluation and stated that he suffered from depression.  He also indicated that he had come forward, pled guilty, exhibited good courtroom behavior, had satisfactory prison behavior since the murder and attack, and that his family loves him.  He also explained that he has never been "a good person" but that he is an "honest person" and believes in taking responsibility for his action.

The court then analyzed each statutory mitigator outlined in section 921.141(7), Florida Statutes (2019), and ultimately found that none applied.  Nevertheless, the court found the following

- 10 -

nonstatutory mitigators applicable and assigned each the indicated weight: (1) Bell took responsibility for his conduct and cooperated during the investigation of and prosecution for the killing of Eastwood (little weight); (2) Bell exhibited appropriate courtroom behavior (little weight); (3) Bell had never assaulted any corrections officers until the attack on Officer Newman (no weight); (4) Bell's family loves him (slight weight); and (5) Bell had been previously diagnosed with and treated for depression (little weight).

The court then weighed the aggravating factors against the mitigating circumstances, concluding that "the aggravating factors clearly, convincingly, and beyond a reasonable doubt outweigh[ed] the mitigating factors." Accordingly, the trial court sentenced Bell to death.

Bell now appeals.

## ANALYSIS

Bell raises two issues for our review. First, he argues that given the limited mitigation presented in this case, the trial court abused its discretion by failing to order the preparation of a comprehensive PSI, by not requiring the State to present all mitigating evidence in its possession, and by failing to appoint

counsel to further investigate his potentially mitigating circumstances. Second, Bell asserts that the trial court committed fundamental error by failing to determine beyond a reasonable doubt that the aggravating factors in his case were sufficient to impose a death sentence and that those factors outweighed the mitigating circumstances. Though he has not raised this issue, we also address whether Bell intelligently and voluntarily entered his no-contest plea.

### *Mitigation*

As to his first point, Bell argues that, given the minimal mitigation presented at his consolidated hearing, the trial court erred in failing to employ the mitigation-investigation procedures this Court established in *Muhammad* and modified in *Marquardt*,[8] thereby depriving him of an "individualized" sentencing determination.[9] We disagree.

---

8. *Marquardt v. State*, 156 So. 3d 490 (Fla. 2015) (modifying *Muhammad*'s procedures to require trial courts to appoint independent, special counsel to represent the public interest in bringing forth all available mitigation).

9. The United States Supreme Court's precedent regarding mitigation "confer[s] upon defendants the right to present sentencers with information relevant to the sentencing decision and

As a threshold matter, this Court reviews a trial court's consideration of mitigation evidence for abuse of discretion. *Foster v. State*, 679 So. 2d 747, 755 (Fla. 1996). And, where a defendant fails to preserve—by specific objection—the trial court's alleged errors, this Court will only reverse where there is a showing of fundamental error. *See Hopkins v. State*, 632 So. 2d 1372, 1374 (Fla. 1994).

Additionally, this Court affords competent capital defendants "great control over the objectives and content of [their] mitigation." *Boyd v. State*, 910 So. 2d 167, 189 (2005). Thus, regardless of "[w]hether [the] defendant is represented by counsel or is proceeding pro se, the defendant has the right to choose what evidence, if any, the defense will present during the penalty phase." *Id.* at 189-90.

A capital defendant may waive the right to present evidence, but such a waiver does not eliminate the court's responsibility to consider mitigating evidence in the record. *See Sparre v. State*, 164

oblige[s] sentencers to consider that information in determining the appropriate sentence. [And] [t]he thrust of [the Supreme Court's] mitigation jurisprudence ends [t]here." *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006).

So. 3d 1183, 1196 (Fla. 2015). Specifically, when a capital defendant waives the right to present any mitigating evidence and invites a death sentence, the trial court must order the preparation of a comprehensive PSI and require the State to put into the record any mitigating evidence in its possession. *See Muhammad*, 782 So. 2d at 343.

However, where a defendant does not waive the right to present mitigation, *Muhammad*'s investigative procedures do not apply. *See Eaglin v. State*, 19 So. 3d 935, 945-46 (Fla. 2009) (noting that *Muhammad*'s procedures "only [apply] to cases in which there is a complete waiver of all mitigation"); *Boyd*, 910 So. 2d at 189 (finding *Muhammad* inapplicable where the defendant "did not waive all mitigation but only limited the matters presented on mitigation"); *McCray v. State*, 71 So. 3d 848, 880 (Fla. 2011) (holding *Muhammad* did not apply where the defendant "did not waive all mitigation"); *see also Craft v. State*, 312 So. 3d 45, 53-54 (Fla. 2020) (declining to apply *Muhammad* where the defendant did not waive the presentation of mitigation evidence).

Here, Bell did not waive the right to present mitigation. In fact, he offered several items of mitigation into evidence during his

penalty-phase testimony, including his history of depression, his good courtroom behavior, his good behavior in prison since the incident, the fact that aside from Officer Newman, he had not assaulted any other officers at Mayo, and the fact that he had voluntarily entered his no contest plea. Bell also testified that his family loved him and that he had always been an honest person. Furthermore, Bell offered into evidence his competency evaluation— which detailed his history of and treatment for chronic recurrent major depressive disorder, generalized anxiety disorder, and antisocial personality disorder.

Thus, Bell did not waive his right to present mitigation and *Muhammad* does not apply. Accordingly, the trial court did not abuse its discretion by not employing all the procedures required in *Muhammad.*

### *Sufficiency of Findings*

Next, Bell argues that the trial court committed fundamental error by failing to find beyond a reasonable doubt that sufficient aggravating factors existed to warrant a death sentence and that those factors outweighed the mitigating circumstances. According to Bell, the weighing determinations in section 921.141 are subject

to the beyond-a-reasonable-doubt standard. Our recent case law foreclosing this argument, and we see no reason to depart from this precedent. *See Rogers v. State*, 285 So. 3d 872, 885 (Fla. 2019) (rejecting the argument "that the trial court erred in failing to instruct the jury that it must determine beyond a reasonable doubt whether the aggravating factors were sufficient to justify the death penalty and whether those factors outweighed the mitigating circumstances"); *Lawrence v. State*, 308 So. 3d 544, 552 n.8 (Fla. 2020) (finding this fundamental-error claim "equally meritless" where a defendant waived the right to a penalty-phase jury); *Craft*, 312 So. 3d at 57; *Santiago-Gonzalez v. State*, 301 So. 3d 157, 177 (Fla. 2020); *Bright v. State*, 299 So. 3d 985, 998 (Fla. 2020); *Davidson v. State*, 323 So. 3d 1241, 1247-48 (Fla. 2021).

### *Voluntariness of No Contest Plea*

Finally, in death penalty cases, this Court has a "mandatory obligation" to review Bell's conviction for first-degree murder even where he has entered a no contest plea. *Doty v. State*, 170 So. 3d 731, 738 (Fla. 2015). In conducting this review, we "scrutinize the plea to ensure that the defendant was made aware of the consequences of his plea, was apprised of the constitutional rights

he was waiving, and pled [no contest] voluntarily." *Ocha v. State*, 826 So. 2d 956, 965 (Fla. 2002). We also review the relevant factual basis for the plea. *Doty*, 170 So. 3d at 739.

Here, Bell indicated he understood the constitutional rights he was giving up by pleading no contest. The plea form—which Bell stated he read and understood—expressly stated that he understood that by pleading, he gave up the right against self-incrimination.

The trial court explained to Bell the seriousness of the charges he faced as well as the fact that his first-degree-murder charge carried a possible sentence of death. Bell stated he understood. When asked whether anyone threatened, coerced, or promised him anything in exchange for entering his plea, Bell answered no.

Finally, the State provided a factual basis for each charge underlying Bell's no contest plea—including the first-degree murder charge—and Bell did not object to any portion of the factual basis.

Therefore, we find that Bell voluntarily and knowingly entered his no contest plea. *See Covington v. State*, 228 So. 3d 49, 67 (Fla. 2017).

## CONCLUSION

Accordingly, we affirm Bell's first-degree murder conviction and sentence of death.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

For the reasons expressed in my dissenting opinion in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020) (receding from proportionality review requirement in death penalty direct appeal cases), I can only concur in the result.

An Appeal from the Circuit Court in and for Lafayette County,
    David W. Fina, Judge – Case No. 342019CF000055CFBXMX

Jessica J. Yeary, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, Florida,

    for Appellee